# Triest & Co. v. Enslen.

### *Bill in Equity to Enjoin Enforcement of Executions.*

1. *Constitutionality of statute providing for holding terms of circuit court of Jefferson county at Bessemer.*—The statute entitled "An act to provide for holding terms of the circuit court of the tenth judicial circuit for the trial of civil causes at Bessemer, in and for" certain designated precincts of Jefferson county, "and to regulate the holding of said court," being in its essence but an act to provide for the holding of terms of the circuit court of Jefferson county at Bessemer for the trial of civil causes arising within the particularly designated parts of said county, which purpose is clearly expressed in its title. is not violative of the constitution; nor is such act open to constitutional objection on the ground that it provides for the trial of only civil causes at Bessemer, and that the jurisdiction of the civil cases is confined to causes of action arising within the designated territory, or on the ground that the act refers to the circuit court to be held at Bessemer as that of the tenth judicial circuit, instead of the circuit court of Jefferson county, because, since Jefferson county is known to be in the tenth judicial circuit, it can but be understood that the act refers to the circuit court of Jefferson county.

2. *Claim suit; jurisdiction of the circuit court.*—When property is levied upon under a writ of attachment, which is made returnable to the circuit court, and a claim is interposed under the statute to such property, the issue formed for the trial of the right of property is within the jurisdiction of any circuit court in the State, which acquired jurisdiction of the persons of the plaintiff in attachment and the claimant.

3. *Same; transfer of cause to another circuit court does not invalidate judgment.*—Where, upon the interposition of a claim to property levied upon under a writ of attachment, returnable to the circuit court, the claim suit is transferred, by agreement between the plaintiff in attachment and the claimant, to the circuit court sitting in another place, such court acquires jurisdiction of the claim bond notwithstanding the fact that the sureties on the claim bond did not consent

[Triest & Co. v. Enslen.]

to the transfer, if the agreement was made in good faith, and without fraudulent collusion between the plaintiff and the claimant, whereby the sureties' rights to have the claims adjudged by a competent tribunal was abridged or defeated.

4. *Same; sureties on claim bond not released by agreement to try two or more claim suits together.*—The fact that, by the consent of the plaintiff in attachment and the claimants, who have interposed their claims to separate portions of the property levied upon, the several claim suits are tried together, does not release the sureties on the claim bonds from liability thereon, if the bonds are returned forfeited after judgment rendered in favor of the plaintiff in attachment.

5. *Equity jurisdiction; when will not enjoin proceedings on execution issued on forfeited claim bond.*—When, upon the return of a claim bond forfeited, the execution issued thereon against the principal and surety, is irregular in form and for an amount exceeding the penalty of the bond, the surety has a plain and adequate remedy in the court out of which the execution issued, and can not maintain a bill in equity to enjoin the enforcement of the execution.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellee, Eugene F. Enslen, against the appellants, Triest & Company, to enjoin the respondents, their agents or attorneys, from enforcing two executions issued against the complainant, who was one of the sureties on two separate claim bonds.

The case made by the bill was substantially as follows: On December 27, 1889, Triest & Company sued out an attachment against M. Nathan & Son, who resided and did business in the city of Bessemer, in Jefferson county, Alabama, which writ of attachment was returnable to the circuit court of Jefferson county. This writ of attachment was levied upon the stock of goods in the storehouse which had been occupied by M. Nathan & Son; and on December 29, 1892, the property so levied upon was claimed by three separate parties—each claiming a distinct portion of the stock of goods—and the sheriff required three separate claim bonds, which were given. On two of these claim bonds the complainant, Enslen, became the surety; the principal in one of the claim bonds being A. Kolsky, claimant, and in the other, Ida Levy, claimant. After making the delivery of the claim bonds, the causes were docketed by the clerk of the circuit court upon the docket of the circuit court

of Jefferson county, at Bessemer, Alabama, under the style of Triest & Co., plaintiff, v. M. Nathan & Co, defendant, A. Kolsky, claimant; and Triest & Co., plaintiffs, v. M. Nathan & Son, defendants, Ida Levy, claimant. The transfer of said causes to the circuit court, sitting at Bessemer was without the knowledge or consent of Enslen, the surety on the claim bonds, and he did not know until one or two days before the issuance of the executions on said claim bonds that the said cause had been transferred to or tried by that court.

The three claim suits in which Triest & Co. were plaintiffs, were, by consent and agreement between the plaintiffs and the several claimants, heard and tried by the circuit court sitting at Bessemer, and were tried at one and the same time and determined in one proceeding. In each of said causes judgment was rendered against the claimants, and the property described in the respective bonds was condemned to the satisfaction of the plaintiffs' claim; judgment having been previously rendered in favor of the plaintiffs against the defendants in attachment. The property to which the respective claims were interposed not being surrendered within thirty days from the rendition of judgment in the claim suits, each of the claim bonds was returned forfeited, and the clerk of the court issued executions on each of the bonds against the principal and sureties thereon. Two of these executions were against the complainant, Enslen, who was a surety on two of the bonds.

The complainant averred in the bill "that by the terms of the act of the General Assembly of Alabama, providing for the holding of said circuit court at Bessemer, the jurisdiction of said court and its powers are limited to certain precincts in said act mentioned, and that said act provides that causes depending in the circuit court of Jefferson county, Alabama, in which the defendant or defendants shall reside in the territory mentioned in said act, shall be transferred to the dockets of the court provided for in said act. And orator further states that the said claimants did not at the time of the institution of said claim suits, reside, or have not at any time resided, in any part of the territory mentioned in said act, providing for said court."

It was further averred in the bill that the consent of

[Triest & Co. v. Enslen.]

the plaintiffs and each of the claimants in the claim suits to try said causes in the circuit court sitting at Bessemer, and the actual trial of them in said court, and the trial of the said three causes in one proceeding and making them interdependent, without the consent or agreement of the complainant, was in violation of his undertaking in the said bonds, and discharged him from liability thereon ; that neither of the executions issued on the claim bonds alleged to have been forfeited conformed to the law in such cases, if there existed a right to issue such executions, and said executions were void ; and that they were severally in excess of the penalty of the respective bonds. It was then averred that the executions were in the hands of the sheriff of said county, and he was proceeding to enforce them, and unless restrained and enjoined, the sheriff would seize the complainant's property and sell it to satisfy said executions.

Triest & Company were made parties defendants ; and the prayer of the bill was that "said defendants and their agents and attorneys be restrained and enjoined from further proceeding against and other interference with, and in molesting of, orator and his property under and by virtue of the said two executions in favor of Triest & Co. against orator and others."

A temporary injunction was granted upon the filing of the bill. The defendant moved to dismiss the bill and to dissolve the injunction granted on the grounds, first, because of the want of equity in the bill, and, second, because the complainant has an adequate remedy at law.

Upon the submission of this motion, both the motion to dismiss the bill and to dissolve the injunction were overruled. The defendants appeal from this decree, and assign the same as error.

JOHN H. MILLER, for appellant.—No new court is provided by the act of 1892-93, page 669. That act shows clearly that its meaning is to hold sittings of the circuit courts of Jefferson county, Alabama, at Bessemer, Ala. The title of the act is "to provide for holding terms of the circuit court of the tenth judicial circuit at Bessemer" &c. In section two of the same act, this language is used : "the circuit court of Jefferson county as now held at Birmingham."

When a court of law can do as full justice to the parties and to the matter in dispute as equity, a court of equity will not interfere or stay proceedings.—3 Pomeroy's Eq., § 1361 and notes. Equity will not restrain proceedings on judgment or execution upon any mere legal grounds.—3 Pomeroy's Eq., § 1361; *Duckworth v. Duckworth*, 35 Ala. 70.

Every court has an inherent power to quash an execution issued by its ministerial officer, irregularly or improvidently.—*Rhodes & Barefoot v. Smith*, 66 Ala. 175; *Mobile Cotton Press v. Moore*, 9 Porter, 679; *Henderson v. Henderson*, 66 Ala. 556.

The surety, Eugene Enslen, had no vested right under claim bonds he signed, and his contract was not impaired by the trial of the cause at Bessemer, such trial affecting only the remedy. Alterations in procedure are always retrospective unless there is some good reason against it.—Endlich on Interpretation of Statutes, § 285; page 389, § 287 and authorities.

Chancery has no jurisdiction to issue an injunction on account of a judgment or execution being void, erroneous, unjust or contrary to good conscience, but the party must show surprise, accident, mistake or fraud, and be without fault on his part.—*Collier v. Falk*, 66 Ala. 223; *Murphree v. Bishop*, 79 Ala. 404; *Glass v. Glass*, 76 Ala. 368; *Watts v. Frazer*, 80 Ala. 186; *Headley v. Bell*, 84 Ala. 346; *Cooper v. A. & A. R. R. Co.*, 85 Ala. 106; *H. A. & B. R. R. Co. v. B. U. R. R. Co.*, 93 Ala. 505.

The sureties are concluded by the judgments against their principals in claim bonds in trial of the right of property, and the court at Bessemer, having jurisdiction and the principals appearing, going to trial and submitting their causes to the jury, the sureties are estopped from claiming the benefit of any irregularity in said trial, if said trial was fair, and the cause fully presented, as the court must presume. Sureties on various bonds, given in the course of judicial proceedings are conclusively bound by the judgments against their principals. Brandt on Suretyship and Guaranty, § 524; Freeman on Judgments, § 180; *Dickerson v. Herman*, 9 Daly 298; *McKinney v. Low*, 1 Por. 129; *Clough v. Johnston*, 9 Ala. 425; *Thompson v. Clopton*, 31 Ala. 647; *Gager v. Gordon*, 29 Ala. 344.

[Triest & Co. v. Enslen.]

E. K. CAMPBELL and J. M. GILLESPIE, *contra.*—The act providing for the holding of a court at Bessemer is unconstitutional, so far as it attempts to provide for the holding there of the circuit court of Jefferson county, because: (1.) It does not, by its terms, provide for the holding of terms of the circuit court of Jefferson county, but does provide that the "circuit court of the tenth judicial circuit" shall hold there, and that is not the circuit court of Jefferson county, there being three circuit courts in the tenth judicial circuit. (2.) The act abridges the jurisdiction of the circuit court, as to causes to be tried. (3.) The act abridges the territorial jurisdiction of the circuit court. (4.) The act provides that the judge of the tenth judicial circuit shall preside over said court, whereas Bessemer may not be at all time in the tenth judicial circuit, and the electors in said territory would not then have the right secured by the constitution of chosing or voting for the judge that is to preside at said court.—Const. Alabama, Art. VI, §§ 1, 4, 5, 6; *Dunbar v. Frazer*, 78 Ala. 529; *Ex parte Roundtree*, 51 Ala. 46; 3 Amer. & Eng. Encyc. of Law, 693. (5.) The title of the act does not "clearly express" an intention to provide for the holding at Bessemer of terms of the circuit court of Jefferson county.—Const. of Alabama, Art. IV, § 2; *Ballentyne v. Wickersham*, 75 Ala. 533.

A surety can stand on the "very terms of his contract and any charge therein discharges him," whether he is injured thereby or not.—*Anderson v. Bellenger*, 87 Ala. 336. The execution complained of is in excess of the penalty of the surety's bond, and the execution does not purport to be upon a forfeited bond but upon a judgment of a court; and the chancery court has original jurisdiction in matters of suretyship.—1 Pom. Eq. Jur., §§ 186, 277, 278; 3 Pom. Eq., § 1417.

McCLELLAN, J.—We are unable to see any constitutional objection whatever to the act providing for the holding of a circuit court at Bessemer in Jefferson county. The constitution does not provide where in the several counties the circuit court shall be held nor inhibit the holding of such courts at more than one place therein, nor require that when such courts are held at two or more places in one county they shall at each and all

such places exercise all the power and jurisdiction vested in them. In at least one instance, the circuit court of a county has been held at two distinct places therein for years past, and it has never been suggested, and could not be successfully maintained, that the proceedings of the court at either of such places were invalid or irregular, and no question as to the constitutionality of the statute in that behalf has ever been made. And so long as provision of law is made whereby all cases and questions within the jurisdiction of these courts instituted and arising in a given county may be adjudged by a circuit court sitting at some place in that county, there is no conceivable organic objection to a further provision of law whereby only civil cases may be heard and determined by such court when sitting at one of two or more places provided for the holding of circuit courts in such county. Nor is it of any consequence · that the jurisdiction in civil cases of a court sitting at one of two places for holding the circuit court in a county is confined to that part of the county adjacent to the place prescribed for the holding of the court. All this is clearly within legislative competency, and in consonance with a long established legislative interpretation or construction as illustrated for many years by the statutes providing for two places of holding the circuit court in Tallapoosa county, and as latterly re-affirmed by the act making like provision in respect of Blount county. It is equally of no consequence that an act providing for terms of the circuit court at an additional place in a county should refer to such court as that of the circuit to which the county belongs rather than as the court of the county in question. The court in reference may well be said to be both the court of the circuit and of the county, since it is in part of its organism the court of the circuit, and in other part both of the circuit and of each particular county. No man would be misled by an act providing that the circuit court of the tenth circuit to which Jefferson county belongs should be held both at Birmingham and Bessemer in that county, into an idea that any other court than the circuit court of Jefferson county was intended. The essence of the act indeed is nothing more or less than to provide for the holding of terms of the circuit court of Jefferson county at Bessemer for the trial of civil causes arising in a certain defined part of

said county ; and this and nothing else is, to all common understanding, aptly expressed in the title of the enactment, and the several provisions thereof are cognate and referable to this one subject matter.—Acts 1892–93, pp. 669–672.

The circuit court sitting at Bessemer—all circuit courts in the State, indeed—had in a broad sense jurisdiction of the subject matters involved between Kolsky and Levy, severally, on the one hand, and Triest & Co. on the other ; or in other words the claims of ownership by these parties of personal property attached on process issued at the suit of Triest & Co. and returnable to the circuit court, and issue taken thereon, presented a subject matter within the competency of all circuit courts to hear and determine, upon acquiring jurisdiction of the persons of the plaintiffs in attachment and the claimants.—12 Am. & Eng. Encyc. of Law, pp. 299, et seq, ; 2 Brick. Dig. 161, § 52. And the circuit court sitting at Bessemer did acquire jurisdiction of the persons of said plaintiffs and claimants through the agreement which they entered into for the transfer of the claim suits to the dockets of that court from the dockets of the circuit court sitting at Birmingham. To the efficacy of such agreement and the validity of the judgments subsequently rendered at Bessemer in the claim suits, it was in nowise essential for the sureties on the claim bonds to have assented to such transfer. They were not parties to the record or in any just sense to the cause in any way. They bound themselves to see to it that, in the event the property claimed and delivered to their principals should be found subject to the plaintiff's attachment by any court having in any legitimate way acquired jurisdiction of the controversies, it should be forthcoming for the satisfaction of the judgment in the attachment suit, or, that failing, to pay the assessed value of the property, not to exceed the penalties of their undertaking. In the absence of fraud on the part of their principals, or fraudulent collusion between the plaintiffs and claimants, or some further agreement between them whereby the sureties' right to have the claims adjudged on the case presented by a competent tribunal was abridged or defeated—and there is no pretense here of fraud or collusion, nor of a further vitiating agreement—the judgment against the claimants is binding on the sureties and determinative

for all purposes of the invalidity of the claims interposed, of the value of the property delivered to the claimants under their bonds, and of the sureties' liability in the event the property is not forthcoming or the value thereof is not paid by the claimants.—*Charles v. Hoskins*, 14 Iowa, 471, s. c. 83 Am. Dec. 378, and notes 381–2 ; 1 Freeman on Judgments, § 180 ; *Jaffray v. Smith, ante*, p. 112.

The fact that by agreement of the plaintiffs and claimants these two and one other claim suit were tried together, does not in itself afford the sureties any just ground of complaint. It does not appear that their rights were prejudiced by the adoption of that course ; such agreements under like circumstances are customary, and the competency of the claimants to enter into them in good faith cannot be doubted.—*Jaffray v. Smith, ante* p. 112.

The foregoing considerations, we believe, dispose of every point arising on this appeal, except that made on the facts that the executions which issued against the complainant as surety on the claim bonds of Kolsky and Levy were irregular in form and for amounts exceeding the penalties of the bonds executed by the respective claimants as principals and complainant as surety. We need only say in this connection that the remedy of the surety on the facts alleged in the bill is plain, adequate and complete in the law court out of which these executions issued, and, of consequence, that he has no standing in a court of equity to have proceedings under said executions enjoined.

The bill is without equity. The motions to dismiss the bill and to dissolve the injunction for the want of equity in the bill should have been granted. The decree denying these motions is reversed, and a decree will be here entered dissolving the injunction and dismissing the bill.

Reversed and rendered.