10 So.2d 746

**Ex parte CENTRAL OF GEORGIA RY. CO.**
et al.

**6 Div. 59.**

Supreme Court of Alabama.

Nov. 19, 1942.

Rehearing Denied Dec. 17, 1942.

Gardner Goodwyn, of Bessemer, for respondent.

BOULDIN, Justice.

This mandamus proceeding looks to a transfer of an action at law, brought in the Bessemer Division of the Circuit Court of the Tenth Judicial Circuit, to the Circuit Court in Birmingham, the county seat of Jefferson County, which comprises the Tenth Judicial Circuit.

Two inquiries are presented: (1) Was the suit properly brought in the Bessemer Division? (2) If not, was the presiding judge in that division under legal duty to transfer the cause on motion of defendants under the facts of this case?

■ The action was to recover damages for death by wrongful act. Without question, the fatal injury was received in the City of Birmingham, without the territory of the Bessemer District. The cause of action arose at the time and place of the injury causing death.

The Act creating the Bessemer Division and providing for holding terms of the Circuit Court in Bessemer was enacted in 1893. Acts 1892–93, p. 669. Section 1 of the Act provides: "That there shall be held in each year two terms of the circuit court of the tenth judicial circuit for the trial of civil causes at the city of Bessemer in and for the particular territory hereinafter described, in Jefferson county, Alabama, said court to be presided over by the judge of the tenth judicial circuit of Alabama."

The territorial jurisdiction of the court, held at Bessemer, is defined by Section 2 of the Act. This section, omitting description of the territory, reads: "That the said circuit court, holding as above provided, shall have, exercise and possess all of the jurisdiction and powers which are now, or which may hereafter be conferred by law in the several *circuit courts of this* State, which said jurisdiction and power shall be *exclusive in, limited to,* and extend over that portion of the territory of the county of Jefferson, which is included in the following precincts, to-wit: * * * and that from and over the above mentioned and described territory all jurisdiction and power exercised therein at the time of the passage of this act by the circuit court of Jefferson county, as now held at Birmingham, and the common law juris-

diction and power of the city court of Birmingham is hereby expressly excluded." (Italics supplied.)

Within the year following its enactment, this Act was challenged upon constitutional grounds, leading to a full consideration and discussion of the purpose and coverage of the Act by this court. Triest & Co. v. Enslen, 106 Ala. 180, 17 So. 356, 357. We quote from that opinion: "We are unable to see any constitutional objection whatever to the act providing for the holding of a circuit court at Bessemer, in Jefferson county. The constitution does *not provide where, in the several counties,* the circuit court shall be held, nor inhibit the holding of such courts at more than one place therein, nor require that when such courts are held at two or more places in one county they shall at each and all such places exercise all the power and jurisdiction vested in them. * * * And, so long as provision of law is made whereby all cases and questions within the jurisdiction of these courts, instituted and arising in a given county, may be adjudged by a circuit court sitting at some place in that county, there is no conceivable organic objection to a further provision of law whereby only civil cases may be heard and determined by such court when sitting at one of two or more places provided for the holding of circuit courts in such county. Nor is it of any consequence that the jurisdiction in civil cases of a court sitting at one of two places for holding the circuit court in a county is confined to *that part* of the county adjacent to the place prescribed for the holding of the court. * * * The essence of the act, indeed, is nothing more or less than to provide for the holding of terms of the circuit court of Jefferson county at Bessemer for the trial of civil causes arising in a certain defined part of said county; and this, and nothing else, is, to all common understanding, aptly expressed in the title of the enactment, and the several provisions thereof are cognate and referable to this one subject-matter."

Like views were expressed in the earlier case of Lowery v. State, 103 Ala. 50, 15 So. 641, dealing with a similar statute for the holding of the Circuit Court at two places in Blount County.

These holdings, quite clearly defining what suits should be brought in the Bessemer Division, remained as the governing law of the subject, and we apprehend were the accepted law by the legal profession

and the courts of Jefferson County until the passage of the Act of 1919: "To better provide for holding the Circuit Court of the Tenth Judicial Circuit at Bessemer, in and for the following portions of Jefferson County," (defining them) "to define the jurisdiction thereof." Local Acts 1919, p. 62.

Section 2 of this latter Act re-enacts Section 2 of the original Act, above quoted, without change of wording so far as here pertinent.

■ The general rule that such re-enactment approves and writes into the statute its settled construction by the court of last resort is the more persuasive when we reflect that of necessity the proper court in which to bring suits in Jefferson County was presented to lawyers and judges continually through the years.

The import of the words "exclusive in" and "limited to" the territory defined in Section 2 is further disclosed by Section 9½ of the same Act, which reads: "Section 9½. That as to civil cases arising in said Fairfield precinct No. 53, and Bethlehem precinct No. 7, the jurisdiction of said Circuit Court of the Tenth Judicial Circuit holding at Bessemer shall be concurrent with the jurisdiction of the Circuit Court of said Tenth Judicial Circuit holding at Birmingham, and as to equity cases arising in the precincts set forth in section two (2) the complainant may file or bring such cases in the Circuit Court of the Tenth Judicial Circuit holding at Bessemer or in the Circuit Court of the Tenth Circuit holding at Birmingham."

■ Fairfield Precinct No. 53 and Bethlehem Precinct No. 7 were included in the territory of the Bessemer District set out in Section 2. Section 9½ modifies Section 2 as to the two precincts named. How? By providing that "as to civil cases arising" therein, suits may be brought in the Circuit Court at Bessemer or at Birmingham. Again "as to equity cases arising in the precincts set forth in section two (2)," the Bessemer District, suits in equity may be brought either in Bessemer or Birmingham.

Thus Section 9½ modifies Section 2 in two respects, namely, civil cases at law arising in the two precincts named in Section 9½ may be brought either in Bessemer or Birmingham, and all equity cases arising in the Bessemer District may be brought either in Bessemer or Birming-

ham. Thus far the "exclusive" jurisdiction in the court at Bessemer was modified. But observe that in no case at law or in equity was suit to be brought in Bessemer unless the case arose in the Bessemer District; that suits in Bessemer were "limited to" cases arising in the Bessemer District was left untouched by Section 9½.

■ Reading the legislative mind from the Act of 1919 as a whole, we are impressed that Section 2 thereof, which is the law to this day, means that civil suits at law can properly be brought at Bessemer only in cases arising in the Bessemer District, meaning "civil causes arising" therein, to use the words of Triest & Co. v. Enslen, supra. On this point compare Hines v. Hines, 203 Ala. 633, 84 So. 712; McCreless v. Tennessee Valley Bank, 208 Ala. 414, 94 So. 722; Belding v. State, 214 Ala. 380, 107 So. 853.

■■ The purpose of our several legislative acts providing for holding terms of the circuit court at places other than the county seat is for the convenience of the people in the district defined by statute. In the Act before us, as construed by this court soon after its passage, this convenience was deemed to be best conserved by giving exclusive jurisdiction of civil suits based upon causes of action arising in the Bessemer District, and limited to causes of action arising therein. The act does not deal with what suits may properly be brought in Jefferson County under the general venue laws of Alabama. The Constitution and statutes prescribe the county or counties in which the several classes of actions may be brought. The statute before us deals with the venue as between divisions of the circuit court, each with like jurisdiction over the subject matter, but held at different places in the county. To make clear that the general venue laws should not be construed into these statutes, the lawmakers wrote into the chapter on Venue of Actions the following: "§ 64. Local laws in counties having two courthouses unaffected.—In all counties having two courthouses, the provisions of this chapter shall not affect any local laws relating to venue in force at the adoption of this Code." Title 7, § 64, Code of 1940.

■■ Clearly all suits maintainable in Jefferson County under the general venue statutes are still maintainable in that county. All such suits not maintainable in Bessemer are properly brought in Birmingham, the county seat. Since the venue of

suits in the Bessemer Division of the circuit court is limited to suits upon causes of action arising within the territorial jurisdiction of that court, suits upon all causes of action not arising therein must be brought in Birmingham.

This, it seems to us, gives effect to the terms of the statute to the effect that the court at Bessemer has exclusive jurisdiction of all civil actions at law upon causes of action arising in the territorial jurisdiction of that court, and such jurisdiction is limited to suits upon causes of action arising within such territory.

The trial court based his ruling on Ex parte Kemp, 232 Ala. 434, 168 So. 147, which fully supports such ruling. That case made no reference to the case of Triest & Co. v. Enslen, supra, nor other cases of like import, nor did it take note of or define the meaning of "limited to" in the statute. We think the case out of harmony with Triest & Co. v. Enslen, and cases to like effect, and one or the other must be overruled. Impressed that the correct view is as hereinbefore expressed, Ex parte Kemp is overruled on the point here involved.

Ex parte Kemp seems to have been supported by Ex parte Fairfield-American National Bank, 223 Ala. 252, 135 So. 447. That case was a suit in equity. The holding was strictly correct, if referring to Section 9½ of the Act of 1919. There was an attempt at repeal of this section by a general law. Gen.Acts 1927, p. 711. Whether this act was considered in deciding the Fairfield Bank case does not appear. See Local Acts 1935, p. 216. If that decision was based on Reeves v. Brown, 103 Ala. 537, 15 So. 824, therein cited, the reference was inapt. "District or county," as used in Reeves v. Brown, meant the same thing, had no reference to districts within a county. Code of 1886, § 715. The reasoning in that case was erroneous and misleading, and is overruled so far as in conflict with this decision.

The right of transfer to the court in which the suit should have been brought is governed by Title 13, § 156, Code of 1940, which reads: "§ 156. When cause transferred to another court of like jurisdiction. —Whenever it shall appear to any court of law or equity that any cause filed therein should have been brought in another court of like jurisdiction in the same county, the court shall make an order transferring the cause to the proper court and the clerk or register shall forthwith certify the pleadings, process, costs and order to the court to which the cause is transferred, and the cause shall be docketed and proceed in the court to which it is transferred and the costs accrued in the court in which the cause was originally filed shall abide by the result of the suit in the court to which transferred."

This statute vests in the court the power to order a transfer on his own motion; thus conferring authority to keep a proper balance between pending actions in the several divisions, and to carry out the policy of the law expressed in statutes like that before us. But, each division of the court having jurisdiction of the subject matter disclosed in the complaint, and jurisdiction over the person of defendant may be acquired by his own appearance, and interposing a defense to the merits, a defendant so appearing waives his right of transfer. There are several defendants in the instant case. Two corporate defendants had waived their rights to a transfer by filing demurrers to the complaint. This could not prejudice the right of any other defendant in that regard.

Nor did the fact that the defendants who had waived their rights, respectively, joined in the motion to transfer warrant a refusal of the motion. The case is unlike the joinder of several plaintiffs claiming upon a joint cause of action, wherein all must recover, or none can recover. This right of transfer is the individual right of each defendant. When the right of transfer is invoked by motion of one or more defendants, who have not waived such right, the duty is upon the court to grant it regardless of the attitude of other defendants. In view of the transfer statute above quoted, the suit was not subject to plea in abatement. Movents properly abandoned such plea and invoked the transfer statute.

The writ of mandamus is due to be awarded. Unless, upon advice of this decision, the motion to transfer is granted, a writ will issue on request of petitioner.

Writ awarded.

All Justices concur, except FOSTER, J., who dissents.

FOSTER, Justice (dissenting).

The question of the interpretation of section 2 of the Bessemer Court Act of 1919 (Local Acts 1919, page 62) should

not now be approached as a new one in respect to the venue of causes of action which may arise in the Bessemer Division. I think as an original proposition, the Act could very well be construed on either of two theories. One that the venue statute should apply as though it created a separate county; and, another, that it was intended to confine them to that court and eliminate the Birmingham court from considering causes which arose in the Bessemer Division, though the parties may all reside in Birmingham, and though if they resided in another county, it would not exclude that county as being the proper venue.

That being the situation, this Court deliberately accepted the former theory in Ex parte Fairfield-American Nat. Bank, 223 Ala. 252, 135 So. 447, decided in 1931.

But it is said that we should not treat that case as authoritative because it was controlled by section 9½ of the Act, being one in equity, and because it was contrary to the case of Triest & Co. v. Enslen, 106 Ala. 180, 17 So. 356.

The contention concedes that the legislature by the Act of September 9, 1927 (page 711) undertook to repeal section 9½. But the argument is that the repealing act was general, when it should have been passed after publication as a local act, and that therefore it was unconstitutional and should have been ignored by the Court in the Fairfield case, supra, and that no reference was made to it in that case, but it was planted on the venue statute, it is not an authority that the venue statute should be controlling. But this argument cannot stand. This Court never disregards an act as unconstitutional unless the contention is made, and it is necessary to a decision of the case. The report of the case gives no indication of such contention. The briefs are not so based. Nothing in the opinion gives the slightest indication of such contention. And the argument and reasoning in the case show that it was not necessary to declare it unconstitutional, since the same result was held to follow under the venue statute.

Moreover, it is farfetched to say that though it was planted on the venue statute, it should not have been, and, therefore, it is not an authority for that statute. That reasoning is not sound. For it stands flatly on the venue statute without any doubt or uncertainty. It was as clear as

language could express the thought, and stood four years in bold relief. Then the legislature by the local act of September 7, 1935 (page 216) reenacted section 2 of the Act in the same language except as to the boundaries of the Bessemer Division, also amended sections 5 and 8, and declared that section 9½ be repealed if it had not already been repealed.

So that the attention of the legislature was directed to venue especially, since section 9½ was specifically considered. It was content to confine the repeal to section 9½, leaving venue otherwise unaffected. It was a legislative declaration that the general venue statute had application as had been declared in Ex parte Fairfield-American Nat. Bank, supra.

In the case of Galloway Coal Co. v. Stanford, 215 Ala. 79, 109 So. 377, two principles are mentioned, which are well established. One is that under the doctrine of stare decisis, judicial decisions deliberately rendered should not be set aside, unless clearly wrong, or violative of sound principle or social morality. This is said to express the conservation of the law and underlies its entire structure. The other principle is that the legislature adopting a statute (of another state) is presumed to have intended it to have the construction placed upon it at that time and place. And the rule is there also said to be that in the adoption of a code or re-enactment of an act the legislature is presumed to have known the fixed construction which it had received and the substantial re-enactment of such statute is a legislative adoption of that construction. Morrison v. Stevenson, 69 Ala. 448; Wood Dickerson Supply Co. v. Cocciola, 153 Ala. 555, 45 So. 192. Many cases are digested in the Pocket Part of 18 Ala.Dig., Statutes, ⊂⇒ 225¾. They are so numerous I will not undertake to set them out in detail. I do not think any principle is better settled.

So that when this Court in Ex parte Kemp, 232 Ala. 434, 168 So. 147, followed Ex parte Fairfield, supra, it but recognized this theory of stare decisis, and neither of those cases should be set aside except by the legislature.

But it is said that the Fairfield case, supra, did not observe that principle for that the same terms as are set forth in section 2 of the Act of 1919, had been construed as now interpreted in an act of 1893, and that therefore the legislature intended

to adopt that construction. The case relied on is Triest & Co. v. Enslen, supra. That case did not consider venue, and had no such thought insofar as there manifested. It was only considering the constitutionality of the act of 1893. It was only incidentally observed that its essence is to provide for holding circuit court at Bessemer for the trial of causes arising in that part of the county. Such was not the language of that act nor that of 1919.

There was no mention made in either act of causes arising in that part of the county. But they limited the *jurisdiction and powers* of the court in the Bessemer Division exclusively to that part of the county. "Jurisdiction connotes the power to decide a case on its merits, while venue connotes locality, the place where the suit shall be heard." 67 Corpus Juris 11. It meant that given the proper venue as being in Bessemer Division, the circuit court of that division shall be exclusive of all other courts in that territory. Such is the plain meaning of section 2. While the broad language of the opinion in Triest & Co. v. Enslen, supra, may give a different meaning to it, that contention was not made in the Fairfield case, supra, nor Kemp case, supra. The Fairfield case was certainly the last, and a very clear construction of the Act in a case where its decision was the only question involved at the time the legislature re-enacted it in 1935.

My argument is not now on the proper construction of section 2 of the Act of 1919, as an original proposition, but that its construction in the Fairfield case, supra, was adopted in 1935 by re-enacting it in the same language. The legislature would not have jumped back over the Fairfield case to the case of Triest & Co. v. Enslen, supra, without giving some expression to an intention to do so. We are bound to assume that they considered the last authoritative expression of this Court as the one of importance: not adopting one much older, relating to a different act at a time when the Court was not thinking about its construction in respect to venue, and what was said in that connection was not necessary to the decision reached, but was simply incidental.

I am fully persuaded that to overrule or set at naught for any reason now urged either the Fairfield or the Kemp case, supra, would upset settled principles of stare decisis, and I cannot concur in such a result.