187 So.2d 264

**SEABOARD SURETY COMPANY**

v.

**WILLIAM R. PHILLIPS & COMPANY.**

**6 Div. 153.**

Supreme Court of Alabama.

Jan. 6, 1966.

Rehearing Denied June 2, 1966.

London, Yancey, Clark & Allen, Birmingham, Ling & Bains, Bessemer, for appellant.

Frank Marsh, Bessemer, for appellee.

SIMPSON, Justice

In May, 1960, J. E. Milam Construction Company, Inc., hereinafter referred to as Milam, was engaged in the general contracting business. Seaboard Surety Company had bonded Milam on some of his contracts and Western Casualty and Surety Company had bonded others. The plaintiff below, William R. Phillips & Co., Inc. (hereinafter referred to as Phillips) was agent for Western Casualty and there was a premium due Phillips in the amount of $8,021.07. Milam executed two notes payable to Phillips totalling this amount, on May 28, 1960. These notes were payable at the Bessemer Branch of The First National Bank of Birmingham.

By August of 1960, Milam was experiencing serious financial troubles. On August 25, 1960, Milam and Seaboard executed an agreement under which Seaboard guaranteed the payment of a loan of $150,000 which was to enable Milam to complete several jobs it had under construction. An account was opened at The First National Bank of Birmingham. Withdrawals could be made only by checks countersigned by Seaboard. The agreement provided that the money was to be used in part as follows:

> "(E)  To pay such other expenses and indebtednesses as are mutually agreed upon between Contractor [Milam] and Seaboard in order to insure the continued operation of the contracts."

This agreement was signed by Milam and Seaboard.

Following the execution of this agreement a meeting was held in the offices of Milam in Birmingham. Present were Thomas F. Starr, representing Seaboard; a representative of Western Casualty; Jay Milam, president of J. E. Milam Construction Company; Gerald Stone, an attorney representing Western, and the plaintiff. The plaintiff's version of the conversations at this meeting varies from that of the defendant. It is the plaintiff's position that Mr. Starr, the Seaboard representative, assured him and others present that under the arrangement worked out between Seaboard and Milam, the debt which was due Phillips would be paid. Seaboard denies that Phillips' debt was included.

· In May of 1962, the debt due Phillips had not been paid. Phillips sued Seaboard, in the Bessemer Division of the Circuit Court of Jefferson County, for breach of contract claiming $8,021.07. Trial was had and the jury returned a verdict for Phillips. This appeal followed.

Appellant assigns as error the refusal of the court below to grant its motion to transfer the cause to the Birmingham Division of the Tenth Judicial Circuit, arguing that the transaction out of which this suit arose (the conversation referred to above) occurred in Birmingham and hence suit must be brought in the Birmingham Division. The appellant says that unless the statements allegedly made by Mr. Starr in that conversation are the basis of this suit, then the same is barred by the Statute of Frauds as there was no document signed by the defendant to answer for the debt, default or miscarriage of the debt due by Milam to the plaintiff, Phillips.

■ Appellant's contentions are not well taken. In the first instance, it is clear that the Bessemer Division has jurisdiction over causes of action arising within its territory. The notes were payable in Bessemer and default on them occurred there. Hence, the cause of action occurred there. Ex Parte Central of Georgia Ry. Co., 243 Ala. 508, 10 So.2d 746.

■ In the second instance, it would appear to be undisputed that Seaboard was interested in seeing that Milam completed the contracts which it was liable on as surety. To enable him to do that Seaboard entered into an agreement "to pay such other expenses and indebtednesses as are mutually agreed upon between Contractor [Milam] and Seaboard in order to insure the continued operation of the contracts". The jury found as a matter of fact that Milam's debt to Phillips was included in this agreement. This memorandum was signed by Seaboard. We think it clearly sufficient to take the matter out of the Statute of Frauds, Title 20, § 3, Code.

■ In addition, it was clearly to Seaboard's advantage to help Milam complete the contracts which it was surety on. There was obviously sufficient consideration flowing to Seaboard to support its promise to pay even had there been no memorandum signed by it. The promise to pay the debt of another, based upon a new and valuable consideration, beneficial to the promisor, is not within the Statute of Frauds. Locke v. Kay, 257 Ala. 376, 59 So.2d 70.

■ Appellant next objects to the court's allowing the reporter to read to the jury a portion of the testimony of witness Gerald Stone, after the jury had deliberated for some time. We are committed to the proposition that such action is discretionary with the trial court. It is to the advantage of all parties and in the public interest that juries reach a verdict and unless it is apparent that such action is prejudicial to one side or the other, we will not overrule the judgment of the trial court. Iverson v. Phillips, 268 Ala. 430, 108 So.2d 168.

In other assignments made we likewise find no error to reverse.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.

On Application for Rehearing

SIMPSON, Justice.

· In brief in support of his application for rehearing, able attorney for appellant insists that he and co-counsel for appellant are each shocked and dismayed by the foregoing decision. Counsel impugns the opinion as unsound and inadequate and asks the court to explain the result reached therein.

The only phase of counsel's rehearing argument which we deem worthy of response relates to the continued insistance that the trial court erred in refusing to transfer the cause from the Bessemer Division to the Birmingham Division. We previously wrote that there was no er-

ror in the denial of this motion, but perhaps confused appellant as to the reason for this conclusion by noting that "the notes were payable in Bessemer and default on them occurred there". We were aware then and are still aware that this is not a suit on the original notes payable to appellee and signed by J. E. Milam Construction Company, Inc. We are aware that this is a suit for alleged breach of contract against Seaboard Surety Company which the jury found had agreed to pay the appellee an amount of money which J. E. Milam Construction Company, Inc. owed to appellee, evidenced by notes payable in Bessemer. With this understanding, was the suit properly brought in the Bessemer Division?

The act creating the Bessemer Division and providing for holding terms of the circuit court in Bessemer was first enacted in 1893. This act has since been amended several times, the last amendment having been made in 1943. Local Acts, 1943, p. 106. Section 2 of this act (as in the prior acts) defines the territorial jurisdiction of the Bessemer Division, as follows:

> "The said Circuit Court of the Tenth Judicial Circuit, holding at Bessemer, as in this Act provided, shall have, exercise and possess, all of the juridiction and the powers which are now or may hereafter be conferred by law on the several circuit courts of this state, which said jurisdiction and powers shall be exclusive in, limited to, and extend over that portion of the territory of the County of Jefferson, which is described as follows * *."

This section of the act was considered by this court in Ex Parte Central of Georgia Ry. Co., 243 Ala. 508, 10 So.2d 746, cited in the original opinion. There it was expressly decided that:

> "The purpose of our several legislative acts providing for holding terms of the circuit court at places other than the county seat is for the convenience of the people in the district defined by statute. In the Act before us, as construed by this court soon after its passage, this convenience was deemed to be best conserved by giving exclusive jurisdiction of civil suits based upon *causes of action arising in the Bessemer District,* and limited to *causes of action arising therein.* The act does not deal with what suits may properly be brought in Jefferson County under the general venue laws of Alabama. * * * The statute before us deals with the venue as between divisions of the circuit court, each with like jurisdiction over the subject matter, but held at different places in the county." (Emphasis added.)

Keeping in mind that the general venue laws should not be construed into this statute, then, where did the cause of action here sued on "arise"? The appellant argues that if at all, the cause of action arose where the alleged contract was made, i. e. Birmingham. Appellee, on the other hand, insists that the cause of action arose in the Bessemer Division, notwithstanding that the alleged contract was made in Birmingham; the debt was owed in Bessemer and that payment was to be made in Bessemer.

At 92 C.J.S. Venue § 80, p. 776, speaking of statutes fixing venue as the county "where the cause of action arises" it is noted:

> "A cause of action, within the meaning of statutes fixing the venue as the county where the cause of action arises has been said to consist of a duty on the part of one toward another and the violation or breach of that duty, or of plaintiff's primary right and the act or omission of defendant. * * * It arises when that is not done which should have been done, or that is done which should not have been done. * * * the cause of action accrues in the county in which defendant's wrongful act was done."

Relating these general principles to the case at hand, it seems reasonable to us to agree with the trial court that here the cause of action "arose" within the meaning of the Bessemer Division Act within the

**514**

Bessemer Division. The appellee if entitled to payment at all, was entitled to payment there. The original debt was owed and payable there. The breach, if any, it seems to us occurred there, since performance was to be had there. The mere fact that the alleged contract was made in Birmingham does not seem to us to mean that a cause of action thereon could not occur elsewhere. In fact, to adopt the position urged by appellant would be to say that if the contract was made in Birmingham and if it indeed called for complete performance in Bessemer and if the performance never took place, yet nevertheless an action for breach of that contract would have to be brought in Birmingham. We do not think the law requires that result. We are clear to the conclusion that in this case the cause of action "arose" where the breach occurred, i.e. where performance was called for and failed to take place.

We hope that this clarifies our original thinking. Being convinced of the soundness of the original opinion on other points raised in application for rehearing, we do not re-write to them.

Opinion extended and application for rehearing overruled.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.