421 So.2d 1254 (1982)
WINN-DIXIE MONTGOMERY, INC.
v.
Mark BRYANT.
Cecil THORNBERG
v.
Mark BRYANT.
80-887, 80-894.
Supreme Court of Alabama.
October 1, 1982.
As Corrected on Denial of Rehearing November 5, 1982.
*1255 Joe R. Wallace of Davies, Williams & Wallace, Birmingham, for appellant Winn-Dixie Montgomery, Inc.
E. Ray Large, Birmingham, for appellant Cecil Thornberg.
James H. Wettermark of Burge & Florie, Birmingham, for appellee.
PER CURIAM.
The dispositive question presented by these appeals is whether plaintiff's cause of action arose in the Bessemer territorial division of the Tenth Judicial Circuit, and therefore should have been filed and tried in the Bessemer Division.
The facts are as follows: Mark Bryant (plaintiff), worked for his uncle, Cecil Thornberg, who ran a janitorial service which cleaned the Winn-Dixie grocery stores in the Birmingham area. Bryant was a member of one of the cleaning crews.
The crews usually cleaned the Winn-Dixie stores at night. They were locked in the stores for periods ranging from twelve to twenty-four hours. During the time in the stores, crew members ate food stuffs and took cigarettes off the store shelves. Both the Winn-Dixie store managers and Thornberg knew of this practice.
In April 1976, Ray Latty, manager of the Midfield Winn-Dixie grocery store, discovered an inventory reduction in one of the store's meat products. Latty and Thornberg suspected that Bryant and his fellow crew members were taking the meat. The two men decided to secretly observe the cleaning crew as it worked in the Midfield Winn-Dixie store. Along with another Winn-Dixie employee, Latty and Thornberg hid behind a two-way mirror in the Midfield Winn-Dixie's meat department on the night of April 28, 1976. From this vantage point the men secretly watched Bryant and the other cleaning crew members at work. During the night, Bryant and the other crew members took items from the store shelves. The parties disagree as to whether this practice was sanctioned.
After the crew members had finished their work, they were confronted by Latty and Thornberg. Two police officers arrived on the scene, but the officers did not hear the discussion between Thornberg, Latty and the cleaning crew. Bryant claimed that Thornberg and Latty made threats; Bryant testified:
"Q After the police officers left, what happened?
"A Mr. Dismukes left. And Cecil come in and Mr. Latty, and they said they had a little deal for us. We didn't have to sign it. But if we signed it and we quit, they would kill us. Mr. Thornberg said that.
"MR. WALLACE: He said what?
"THE WITNESS: Said they would kill me if I quit.
"MR. WALLACE: Do what?
"THE WITNESS: If I quit.
"MR. WALLACE: Would kill you?
"THE WITNESS: Yes.
"Q Did anybody in that Winn-Dixie store have a gun?
"A Yes, sir.
"Q Who had the gun?
"A Mr. Ray Latty.
* * * * * *
"Q Where was the gun?
"A At first he had it on him, and then he took it off and laid it on the counter.
"Q At what point did he lay it on the counter?
"A After the policemen had left.
"Q After the police left and y'all  Were you standing back at the same checkout counter?

*1256 "A Yes, sir.
"Q Did Mr. Latty make any additional comments at that time?
"A He told us we could sign the papers and we couldn't get no better than that. He said that Cecil  he would back Cecil up all the way if anything happened."
Bryant and the other crew members then signed a paper Thornberg had drafted. The document read as follows:
"I hereby certify that I, the undersigned, have paid for all stolen merchandise taken from the Winn-Dixie Store in Midfield with the exception of the goods taken on April 28, 1976.
"These articles remain in the possession and care of Cecil Thornberg, owner of Mr. Clean Jan. Ser. and was taken from the undersigned when they left the above described store.
 "/s/ Jimmy Monroe
 "/s/ Mark Bryant
 "/s/ Truman Ogle
"Wittness [sic]
 /s/ R.L. Latty
 /s/ Johnny Praytor
 /s/ Cecil Thornberg"
After signing the document, Thornberg told the members of the cleaning crew that unless they continued working for him during the next year, he would report them to the police for theft.
After the incident at the Midfield store, Bryant continued working for Thornberg for another couple of months. In July, Thornberg objected to the length of Bryant's hair and threatened to cut it. Bryant then quit his job, and Thornberg, as he had stated, swore out a warrant in the Municipal Court of Midfield for Bryant's arrest. Authorities arrested Bryant in Talladega and he was placed in the Talladega County jail. Officers transferred him to Midfield, where he was released the following day. The charges were later dismissed against Bryant, because Thornberg failed to appear as a witness.
Thornberg swore out a second warrant for Bryant's arrest in April, 1977. Thornberg appeared at the second trial, and the court convicted Bryant of petit larceny. On appeal, the circuit court for the Tenth Judicial Circuit, Bessemer Division, vacated the judgment on the ground that the second conviction violated Bryant's constitutional rights by subjecting him to jeopardy twice for the same offense.
In March, 1977, Bryant filed the present action against Thornberg and Winn-Dixie, in the Birmingham Division of the Tenth Judicial Circuit, in which he claimed false arrest, false imprisonment, malicious prosecution, slander and involuntary servitude. During trial in April, 1981, the plaintiff amended his complaint to include extortion and blackmail. The defendants properly challenged the jurisdiction of the Birmingham Division of the court to hear the case.
This Court has decided on several occasions the jurisdictional question whether a case was filed in the proper division of the Tenth Judicial Circuit. In Ex parte Central of Georgia Railway Co., 243 Ala. 508, 10 So.2d 746 (1942), the Court stated that "the court at Bessemer has exclusive jurisdiction of all civil actions at law upon causes of action arising in the territorial jurisdiction of that court...." Id. at 243 Ala. 513, 10 So.2d 746. In a decision regarding a contested election in Jefferson County, this Court opined that a case arises wherever the alleged wrong occurs. Mead Corporation v. City of Birmingham, 295 Ala. 14, 15, 321 So.2d 655 (1975).
The jury determined that both defendants, Winn-Dixie and Thornberg, were guilty of extortion and blackmail. The trial court acknowledged that the initial events leading to the filing of this suit occurred in the Bessemer Division, but the trial court reasoned that subsequent acts of Bryant, which consisted of cleaning additional Winn-Dixie stores located throughout Jefferson County, extended jurisdiction to the Birmingham Division. We agree.
The record indicates that not all of the events giving rise to this cause of action occurred at the Midfield Winn-Dixie store, located within the territorial jurisdiction of the Bessemer Division. True, the confrontation *1257 between the parties, the alleged threats made by Thornberg and Latty, and Bryant's signing of the "confession," all occurred at the Midfield store. But the claims for malicious prosecution, extortion, and involuntary servitude arose and accrued in the Birmingham Division.
Under the facts in this case, we hold that, although some of the causes of action arose in the Bessemer Division, others occurred outside of the Bessemer Division and, thus, the Bessemer Division does not have "exclusive jurisdiction of civil suits based upon causes of action arising in the Bessemer District...." Ex parte Central of Georgia Railway Co., 243 Ala. 508, 10 So.2d 746 (1942); Seaboard Surety Co. v. William R. Phillips & Co., 279 Ala. 510, 513, 187 So.2d 264 (1966); Metro Bank v. Real Coal Co., Inc., 374 So.2d 296, 297 (Ala.1979).
Based upon the foregoing, the judgment of the trial court is due to be, and the same hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES, EMBRY and BEATTY, JJ., concur.
MADDOX, FAULKNER and ALMON, JJ., dissent.

On Application for Rehearing
PER CURIAM.
On application for rehearing, appellants argue that the trial court committed prejudicial error by allowing Bryant to amend his complaint at the close of the evidence to include allegations of blackmail and extortion. Although this contention was not addressed in our original opinion, on this application we would point out that Rule 15, Alabama Rules of Civil Procedure, permits liberal amendment of pleadings. Further, it is within the broad discretion of the trial court to permit an amendment to the complaint, subject to reversal on appeal only where there is an abuse of discretion. Walker v. Traughber, 351 So.2d 917 (Ala. 1977). The appellants have not shown that they were prejudiced or that the trial court abused its discretion by allowing the amendment. The evidence supporting Bryant's claims of extortion and blackmail was the same evidence presented throughout the trial and argued before the jury.
OPINION EXTENDED AND CORRECTED; APPLICATION OVERRULED.
TORBERT, C.J., and JONES, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
FAULKNER and ALMON, JJ., dissent.