In Ex parte Central of Georgia Railway, 243 Ala. 508, 512,10 So.2d 746, 750 (1942), this Court held: "Clearly all suits maintainable in Jefferson County under the general venue statutes are still maintainable in that county." Sarah June Adams, the plaintiff in case no. 1011467, argues that because venue is good in Jefferson County and because the action was brought in Jefferson County, albeit in the Bessemer Cutoff, the defendants' privilege of selecting another county to which the action should be transferred pursuant to Rule 82(d)(3), Ala. R. Civ. P., has not yet accrued. I was almost persuaded by this argument; however, I find § 6-3-7(d), Ala. Code 1975, to be an insurmountable obstacle.
Section 6-3-7(d), amended in 1999,[3] provides as follows:
 "(d) Notwithstanding Section 6-3-10, or any local laws relating to venue, in any county having two courthouses, the divisions shall be treated as two separate judicial districts for purposes of venue and for purposes of any change or transfer of venue, unless the jury venire is drawn from throughout the entire county."
(Emphasis added.)
At first I was troubled by the reference in § 6-3-7(d) to "two separate judicial districts" as opposed to "two separate judicial circuits" or "two separate counties." However, in Ex parteLongmire, 584 So.2d 503 (Ala. 1991), this Court construed a local act creating separate divisions in St. Clair County, a single-county circuit, holding that "the Act does not create twoseparate judicial districts for purposes of venue."584 So.2d at 505 (emphasis added). Because the phrase "two separate judicial districts" as used in Ex parte Longmire refers to two separate parts of a single-county circuit, I am persuaded that the reference in § 6-3-7(d) to "two separate judicial districts" refers to two separate parts of the same county. Pursuant to §6-3-7(d), the Bessemer Cutoff must be treated as a county unto itself. This result comports with the determination reached by the Court of Criminal Appeals in Agee v. State, 465 So.2d 1196,1204 (Ala.Crim.App. 1984). In Agee, in the context of venue in criminal cases, that court held as follows:
 "We are convinced that, in criminal actions, the Bessemer court legislation should be read as venue legislation and the two divisions treated as if two separate counties existed. See Shell v. State, 2 Ala.App. 207, 56 So. 39 (1911)." *Page 556 
Treating the Bessemer Cutoff as a county unto itself for venue purposes, as § 6-3-7(d) requires, one could conclude that venue in the Bessemer Division was improper and that the defendants' privilege of selecting another court to which the action should be transferred pursuant to Rule 82(d)(3), Ala. R. Civ. P., has accrued if the construction given to § 2 of the act initially creating the Bessemer Cutoff, Act No. 281, Ala. Acts 1892-93 ("the Act"),[4] in Ex parte Central of Georgia Railway
applies to the circumstances here presented. I do not, however, believe that it does.
Section 2 of the Act provides:
 "That the said circuit court, holding as above provided, shall have, exercise and possess all of the jurisdiction and powers which are now, or which may hereafter be conferred by law in the several circuit courts of this State, which said jurisdiction and power shall be exclusive in, limited to, and extend over that portion of the territory of the county of Jefferson, which is included in the following precincts, to-wit: . . . and that from and over the above mentioned and described territory all jurisdiction and power exercised therein at the time of the passage of this act by the circuit court of Jefferson county, as now held at Birmingham, and the common law jurisdiction and power of the city court of Birmingham is hereby expressly excluded."
In Ex parte Central of Georgia Railway, this Court interpreted the foregoing section of the Act to mean that "the court at Bessemer has exclusive jurisdiction of all civil actions at law upon causes of action arising in the territorial jurisdiction of that court, and such jurisdiction is limited to suits uponcauses of action arising within such territory."243 Ala. at 513, 10 So.2d at 750 (emphasis added).
I am not the first Justice on this Court who has had reservations as to how we got from the language of the Act to the current construction. In his dissent in Ex parte Central ofGeorgia Railway, Justice Foster stated:
 "I think as an original proposition, the Act could very well be construed on either of two theories. One that the venue statute should apply as though it created a separate county; and, another, that it was intended to confine them [causes of action that may arise in the Bessemer Division] to that court and eliminate the Birmingham court from considering causes which arose in the Bessemer Division, though the parties may all reside in Birmingham, and though if they resided in another county, it would not exclude that county as being the proper venue.
 "That being the situation, this Court deliberately accepted the former theory [that the venue statute should apply as though it created a separate county] in Ex parte Fairfield-American Nat. Bank, 223 Ala. 252, 135 So. 447, decided in 1931."
243 Ala. at 514, 10 So.2d at 751. Justice Foster then criticized the majority for overruling Ex parte Fairfield-American NationalBank, 223 Ala. 252, 135 So. 447 (1931), and challenged the validity of relying upon Trieste Co. v. Enslen, 106 Ala. 180,17 So. 356 (1894), because "[t]hat case did not consider venue, and had no such thought insofar as there manifested."243 Ala. at 515, 10 So.2d at 752.
We are now asked to apply the construction of § 2 limiting venue in the Bessemer Cutoff to claims arising in the Cutoff to a *Page 557 
case that did not arise in either the Bessemer Division or the Birmingham Division of Jefferson County. None of the cases in which this rule has been applied deal with a claim arising in a county other than Jefferson County. If we apply this reading of § 2 to cases arising outside Jefferson County, we will have created narrower venue for Alabama citizens who happen to reside in the Bessemer Cutoff than is applicable to all other citizens of this State. I am reluctant to endorse such disparate treatment unless a clear legislative command requires such a result. I cannot conclude that stare decisis requires application of the rule urged on us by the defendants where the factual footing for the rule — claims arising in different parts of Jefferson County — is not present in this case.
Justice Foster noted that the alternative rule accepted by the majority in Ex parte Central of Georgia Railway confined causes of action that may arise in the Bessemer Division to that court and eliminated the Birmingham Division from considering causes of action that arose in the Bessemer Division, though the parties may all reside in Birmingham. Here we are not concerned with eliminating the Birmingham Division from considering a cause of action that arose in the Bessemer Cutoff. As previously noted, we are here dealing with a cause of action that did not arise in either division of Jefferson County.
Rather than apply to significantly different circumstances what is at best a less than obvious response to a legislative command, I would interpret § 2 of the Act as though it created a separate county for venue purposes in the context of claims not arising in Jefferson County. Section 2, after having provided that "jurisdiction and power shall be exclusive in, limited to, and extend over that portion of the territory of [the Bessemer Cutoff,]" concludes with the statement that "all jurisdiction and power exercised therein at the time of the passage of this act by the circuit court of Jefferson county, as now held at Birmingham, and the common law jurisdiction and power of the city court of Birmingham is hereby expressly excluded." (Emphasis added.) I would interpret the references to exclusivity in § 2 as exclusive of that portion of Jefferson County not in the Bessemer Cutoff, and not exclusive of claims that might otherwise be appropriate under general venue laws not in conflict with the provisions for exclusivity within the divisions of Jefferson County. Under this construction of § 2, citizens residing in the Bessemer Cutoff would enjoy the same venue privileges of all other citizens with respect to claims arising outside of the county in which they reside. The defendants, relying solely on the claim's having arisen outside the Bessemer Cutoff, have failed to demonstrate improper venue.
With respect to the denial of the motion to transfer venue pursuant to § 6-3-21.1, Ala. Code 1975, for the convenience of parties and witnesses or in the interest of justice, I would deny the petition for failure of the defendants to show a clear legal right to such relief.
JOHNSTONE, J., concurs.
[3] Act No. 99-249, Ala. Acts 1999.
[4] As the main opinion notes, the Act was repealed in 1900 and then reenacted in 1919 by Act No. 213, Ala. Local Acts 1919. The 1919 version of the Act reenacted § 2 without any pertinent changes in wording.