350 So.2d 447 (1977)
DeSOTACHO, INC.
v.
VALNIT INDUSTRIES, INC.
SC 2560.
Supreme Court of Alabama.
September 30, 1977.
*448 Loma B. Beaty and John C. Wear, Fort Payne, for appellant.
J. C. Kellett of Kellett & Gillis, P. A., Fort Payne, for appellee.
SHORES, Justice.
This appeal concerns an action on an account brought by DeSotacho, Inc., an Alabama corporation, against a New York corporation, Valnit Industries, Inc. Following perfection of service through the Secretary of State, appellee Valnit Industries filed a motion to dismiss for lack of jurisdiction. This motion was granted April 8,1977. The trial court decree stated that Valnit Industries had not transacted sufficient business within the State of Alabama to give Alabama courts jurisdiction in the case. DeSotacho appealed to this court.
Valnit Industries is a hosiery supplier with offices in New York City, New York. The corporation is not qualified with the Secretary of State to do business in Alabama nor does it maintain an office or an agent in this state.
On June 19, 1974, Mr. Sigmund F. Hoffman, president of Valnit Industries, visited the manufacturing plant of DeSotacho which was located in Fort Payne, Alabama. Mr. Hoffman inspected the facilities to determine whether DeSotacho was able to manufacture hosiery for customers of Valnit Industries. The record reveals that this was the first visit by any agent of Valnit Industries to the State of Alabama. Mr. Hoffman returned to New York that same day.
The next day in New York City, Mr. Hoffman met with Mr. Ryan, a buyer for Montgomery Ward, Valnit Industries' principal customer. Mr. Ryan approved DeSotacho as a manufacturer. The first order was then placed by Valnit Industries with DeSotacho on June 20, 1974.
Shortly thereafter, a disagreement arose between the parties concerning the price of the hosiery to be manufactured by DeSotacho. This dispute was settled by correspondence and DeSotacho began filling the order.
Further problems arose between the Valnit Industries and DeSotacho due to the method of shipping used by DeSotacho.
*449 Mr. Hoffman returned to Fort Payne, Alabama, spending two days at the manufacturing plant inspecting the facilities and making suggestions for improvements in the shipping process. Three additional trips were made by Mr. Hoffman to Alabama to discuss these business difficulties with plant managers and employees.
Shipments were made by DeSotacho to Valnit Industries through February 10, 1975. At that time, the Valnit Industries' account had an outstanding balance of $35,825.97. Suit was then filed by DeSotacho to recover this amount on July 8, 1975.
The issue on appeal is whether Valnit Industries, through the activities of its agent, Mr. Hoffman, conducted business within the State of Alabama sufficient for Alabama courts to acquire jurisdiction in this cause.
DeSotacho argues in its brief that Valnit Industries, through the actions of its agent Mr. Hoffman, had sufficient contact with Alabama to bring the New York corporation within the jurisdictional provisions of Rule 4.2(a)(2)(A) or 4.2(a)(2)(I) of the current Alabama Rules of Civil Procedure. We must note, as did the trial court, that although Rule 4.2(a)(2)(A)-(I), ARCP, is a codification of existing statutory and case law concerning jurisdiction over nonresident defendants, this particular amendment was not in effect at the time of the acts by Mr. Hoffman or at the time of the commencement of this suit.
Service of process was obtained in this case upon Valnit Industries under the provisions of Title 7, § 199(1), Code of Alabama 1940 (Recomp.1958), which statute is one of several "long-arm" statutes codified in Rule 4, ARCP, as it existed in 1975. Title 7, § 199(1), provides, in pertinent part, as follows:
"Any nonresident person, firm, partnership, general or limited, or any corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the secretary of state, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident, upon whom process may be served in any action accrued, accruing, or resulting from the doing of such business, or the performing of such work or service, or relating to or as an incident thereof, by any such nonresident, or his, its or their agent, servant or employee. And such service shall be valid whether or not the acts done in Alabama shall of and within themselves constitute a complete cause of action. . . ."
The power of state courts to render judgments in personam against nonresident defendants through provisions of "long-arm" statutes such as Title 7, § 199(1), has been considered by many courts since the case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). This court has recognized that the issue of jurisdiction pursuant to "long-arm" statutes poses a federal question of whether subjection of a nonresident corporation to the jurisdiction of Alabama courts comports with federal due process. King & Hatch, Inc. v. Southern Pipe & Supply Co., 5 Cir., 435 F.2d 43 (1970); Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So.2d 559 (1950).
The following quote from McGee v. International Life Insurance Co., 355 U.S. 220, 222, 78 S.Ct. 199, 200, 2 L.Ed.2d 223 (1957), summarizes a line of cases that form the foundation for statutes such as Title 7, § 199(1):
"Since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned `consent,' `doing business,' and `presence' as the standard for measuring *450 the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Court decided that `due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."` Id., 326 U.S. at page 316, 66 S.Ct. at page 158."
This court, as well as the Supreme Court of the United States, has held that the provisions of Title 7, § 199(1), in regard to substituted service are sufficient to meet the requirements of due process. New York Times v. Sullivan, 273 Ala. 656, 144 So.2d 25, cert. gr., 371 U.S. 946, 83 S.Ct. 510, 9 L.Ed.2d 496 (1962).
Therefore, we must determine if Valnit Industries had certain minimum contacts with this state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice" by examining the existing facts in this case.
We hold that Valnit Industries is subject to jurisdiction in this state. Taken collectively, the contacts of Valnit Industries with Alabama do constitute "minimum contacts" which would allow Alabama to constitutionally compel Valnit Industries to defend this suit in this state.
Unlike International Life Insurance Company, Valnit Industries sent its president to Fort Payne, Alabama, on at least five occasions. He inspected the facilities of DeSotacho and made various suggestions for improvement in those facilities. All of this culminated in a contract whereby Valnit Industries began placing orders for hosiery with the DeSotacho. Pursuant to that contract, DeSotacho manufactured hosiery for customers of Valnit Industries for approximately one year. By mid-February of 1975, Valnit Industries was indebted to DeSotacho in an amount in excess of $35,000. Certainly, to require Valnit Industries to defend a suit by DeSotacho, Inc. to recover the amount of money due it in the State of Alabama does not offend traditional notions of fair play and substantial justice.
A general guideline in cases of this nature, i. e., the performance of business or services by a nonresident corporation so as to justify subjecting it to suit in Alabama is measured by the extent of its activities and the question of fairness as against the inconvenience to the nonresident corporation of requiring trial away from its home. Boyd v. Warren Paint & Color Co., supra. In light of this principle, we hold that the activities of Valnit Industries within Alabama are of such a quantity and quality to justify this state's jurisdiction over that corporation. The decision of the trial court is, therefore, reversed and remanded.
REVERSED AND REMANDED.
MADDOX, FAULKNER, JONES, ALMON, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., and BLOODWORTH, J., dissent.
TORBERT, Chief Justice (dissenting):
I respectfully dissent. I do not agree with the majority that the few isolated and sporadic activities of Valnit Industries within this state constitute sufficient "mimimum contacts" with Alabama so as to compel Valnit Industries to defend the suit in this forum.
The reliance of the majority upon McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), is misplaced. I agree that McGee holds that state jurisdiction over a foreign corporation may be sustained on the basis of a single transactiona single insurance contractwithin the forum state. However, the United States Supreme Court upheld California's assertion of jurisdiction in McGee on the basis of that state's special interest in protecting its citizens from insurers who could use the expense of litigation in a distant forum as a bar to suits on *451 insurance policies. The court placed emphasis on the nature of the contract as one of insurance which necessitated special regulation and stated the following:
"It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forumthus in effect making the company judgment proof."
Id. at 223, 78 S.Ct. at 201.
In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the United States Supreme Court recognized the trend of expansion of in personam jurisdiction over nonresidents as represented by the McGee decision, but held that the state of Florida lacked jurisdiction over a Delaware defendant trustee. The Hanson decision is significant because the Court warned that "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." Id. at 251, 78 S.Ct. at 1238. The Court further stated the following:
"Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the `minimal contacts' with that State that are a prerequisite to its exercise of power over him."
Id.
I fail to find such "minimal contacts" in the circumstances of this case. Valnit Industries did not maintain an office or an agent in this state. It did not ship any goods into this state nor did it perform any labor or services in connection with the goods shipped from DeSotacho. Mr. Hoffman merely negotiated terms of a proposed contract in Fort Payne which was not finalized until approved by Mr. Ryan in New York City. He returned to Alabama to "follow up" on orders for manufactured Alabama goods, which orders had been previously placed by mail from New York City and then filled in the state of Alabama.
I would affirm the decision of the trial court.
BLOODWORTH, J., concurs.