361 So.2d 1021 (1978)
Brenda C. MANN, etc.
v.
FRANK HRUBETZ AND CO., INC., a corporation.
77-287.
Supreme Court of Alabama.
August 4, 1978.
Rehearing Denied September 8, 1978.
*1022 Robert B. Roden of Jones, Arnold & Roden, Birmingham, for appellant.
Robert D. Norman of Norman, Fitzpatrick & Wood, Birmingham, for appellee.
BEATTY, Justice.
The plaintiff appeals from the trial court's order dismissing her action. We reverse and remand.
The basic legal question is whether Alabama has in personam jurisdiction over an Oregon manufacturer who sold its product in Oregon to a customer having a business address in Alabama but who accepted delivery in Wisconsin, and whose product allegedly caused injury while being operated by the purchaser in Alabama.
The plaintiff is the mother of Maria D. Pierce, a deceased child. While riding on a centrifugal amusement machine known as "The Round Up," Marla suffered injuries which allegedly caused her death. Her mother brought this action under Code of Ala. 1975, § 6-5-391 against the operator and owner of the machine, Century 21 Shows, the manufacturer of the machine, Frank Hrubetz and Company, Inc. (Hrubetz), and another. The defendant Hrubetz moved to dismiss the action, alleging a lack of in personam jurisdiction, and in support of its motion submitted an affidavit of its vice-president from which we quote a relevant portion:
[H]e knows that the amusement ride designated as `The Round Up' in the complaint in said suit was manufactured in Salem, Oregon, and delivered and set up in Superior, Wisconsin; that the contract for the ride in question was not made in the State of Alabama, and Frank Hrubetz & Company, Inc. had no maintenance contract in regard to it, maintains no offices, warehouses, employees, parts or equipment in the State of Alabama, does not transact any business in the State of Alabama, has no contract to supply services or goods in this State, nor solicits business by agent herein [sic], or engage in any other persistent course of conduct as to goods manufactured by it for sale.
On the basis of the motion and this affidavit the trial court dismissed Hrubetz as a party defendant. Whether that ruling was correct depends upon whether the conduct of Hrubetz under these circumstances accords with the requirements of Rule 4.2, ARCP. In other words, did Hrubetz have sufficient minimum contact with this state "so that the prosecution of the action against [it] in this state is not inconsistent with the constitution of this state or the Constitution of the United States . . .." Rule 4.2(a)(1)(B) supra.
We have dealt with this principle in two recent decisions. In DeSotacho, Inc. v. Valnit Industries, Inc., 350 So.2d 447, 450 (Ala. 1977) we quoted from McGee v. International Life Insurance Co., 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) which summarized the principle recognized by the United States Supreme Court:
'[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."` . . . [Quoting from International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)].
In that case we held that a foreign corporation which sent its president into Alabama on at least five occasions, culminating in a contract for the purchase of hosiery, the performance of which occurred for approximately one year, represented "minimum contacts" sufficient to satisfy due process requirements justifying substituted service under our then Tit. 7, § 199(1), Alabama Code (Recomp.1958).
And in Semo Aviation, Inc. v. Southeastern Airways Corp., 12 ABR 1363 (May 19, 1978), after reviewing the federal decisions dealing with the constitutional efficacy of *1023 `long-arm' statutes, this Court acknowledged that Rule 4.2, ARCP makes our substituted service "as broad as the permissible limits of due process." Id. at 1368. Sufficient minimum contacts were found to exist in that case because the defendant seller contracted to deliver the products in Alabama, the defendant's agent came to Alabama to deliver the invoices and to collect payment, the defendant assisted in the financing arrangements by contacting an Alabama bank, and the defendant seller was conducting business operations of its own in Alabama.
At bottom, when this question is presented the inquiry must center upon considerations of fairness and convenience. As the Court stated in International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed.2d 95 (1945):
Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, Klein v. Board of Tax Supervisors, 282 U.S. 19, 24, 51 S.Ct. 15, 16, 75 L.Ed. 140, 73 A.L.R. 679, it is clear that unlike an individual its `presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far `present' there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms `present' or `presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. L. Hand, J., in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141. . . .
The answer is not furnished by the application of a mechanical formula, Id. 66 S.Ct. at 159, but by a consideration of the facts of each case. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).
This constitutional requirement was explored in Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). In that case an Illinois plaintiff brought an action for personal injuries against an Ohio manufacturer. Jurisdiction was sought under a section of the Illinois Civil Practice Act which allowed service upon nonresidents outside the state who had submitted to that jurisdiction by committing a tortious act within the state. (Cf. Rule 4.2(a)(2)(C), ARCP). The defendant Titan Valve Manufacturing Company constructed safety valves for use in water heaters. It did no business in Illinois, had no agents there, and maintained no office there. It sold a completed valve to a Pennsylvania manufacturer who incorporated it into a hot water heater. In the due course of business that water heater was sold to the Illinois consumer who alleged that injuries were sustained from the explosion of the water heater which was caused by the negligent construction of the defendant's safety valve. After reviewing federal and state decisions on the issue of due process the court observed at 176 N.E.2d 761, 765:
The relevant decisions since Pennoyer v. Neff show a development of the concept of personal jurisdiction from one which requires service of process within the State to one which is satisfied either if the act or transaction sued on occurs there or if [the] defendant has engaged in a sufficiently substantial course of activity in the State, provided always that reasonable notice and opportunity to be heard are afforded. As the Vermont court recognized [in] the Smyth case [Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664 (1951)], the trend in defining due process of law is away from the emphasis on territorial limitations and toward emphasis on providing adequate notice and opportunity to be heard: from the court with immediate power over the defendant, toward the court in which both parties can most conveniently settle their dispute.
The Illinois court recognized the likelihood that this particular sale was not an isolated instance; however its finding that due process was satisfied was not based upon "substantial use and consumption" of consumer products in that state:

*1024 As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines. By the same token, today's facilities for transportation and communication have removed much of the difficulty and inconvenience formerly encountered in defending lawsuits brought in other States. Id., 176 N.E.2d at 766.
Noting that "[T]he principles of due process relevant to the issue in this case support jurisdiction in the court where both parties can most conveniently settle their dispute[.]" the court concluded that Illinois was the proper forum because the injury occurred in Illinois, Illinois law would govern the substantive questions, and that the witnesses on such issues as the injury, the damages, and other aspects of the occurrence would likely be found in Illinois.
A similar case is Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969). There a Hawaiian plaintiff brought an action for personal injuries in Hawaii against a British manufacturer of motor coach bodies, alleging that the bus in which plaintiff was riding overturned, and that its roof collapsed due to negligent manufacture. The defendant was served under Hawaii's "long-arm" statute which provided for out-of-state service upon one for "The commission of a tortious act within this State[;]." The defendant maintained that the manufacture having occurred in England, no tort had been committed in Hawaii. That issue was resolved against the defendant under the rationale of Gray, supra which held that the resulting injury was inseparable from the negligent act, and thus the act was said to have occurred in Hawaii. Id. at 233; Gray, supra, 176 N.E.2d at 762-3.
The defendant also contended that "minimum contact" requirements were not met because it maintained no representatives in Hawaii, had not registered to do business there, owned no property there, and except for the coach bodies on the coaches sold to the tour company in this instance, its products were not used in Hawaii.
The facts disclosed a typical integrated sales transaction. The purchase order for the tour buses was placed in Hawaii by Maui Island Tours with Haleakala Motors who transmitted it to Vauxhall Motors, Ltd. (in England). Vauxhall manufactured the chassis and sent them to Duple who manufactured the coach bodies, installed them on the chassis, and re-shipped them to Vauxhall who shipped them to Haleakala Motors who sold them to Maui Island Tours.
In finding that the requirement of minimum contact was met, the Ninth Circuit Court of Appeals stated at 235:
In our judgment, the presence of Duple's coach bodies in Hawaii, brought about by Duple's sale to Vauxhall with knowledge that the product was destined for Hawaii, was sufficient contact with Hawaii to meet the requirements of due process.
We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade . . . (emphasis added).
Sells v. International Harvester Co., 513 F.2d 762 (5th Cir. 1975) represents another integrated interstate transaction in which "minimum contact" requirements were satisfied. Brookside Corporation, one of the defendants, manufactured fan blades which were used by another defendant, International Harvester Company, on its truck engines. The plaintiff was driving an International Harvester-made truck upon an Alabama *1025 highway when the fan blade broke away from the engine and penetrated the truck's floorboard, injuring the plaintiff. He sued both Brookside and International. Ultimately Brookside's motion to dismiss International Harvester's cross complaint for indemnity, on the ground of lack of in personam jurisdiction, was granted by the district court. On appeal, however, that action was reversed. On the aspect of due process the Fifth Circuit Court of Appeals held at 763:
Where, as here, a manufacturer sells its product to a national distributor, knowing the product will be used in all states, it does not violate due process to require the manufacturer to defend a products liability suit in that state where the accident occurs (citations omitted). . . .
When we consider the nature of the transaction here and the circumstances of its occurrence we are convinced that a sufficient "minimum contact" has occurred making it reasonable to require the defendant Hrubetz to defend this action in an Alabama forum. Notwithstanding an absence of evidence of more than this one instance of dealing, cf. McGee v. International Life Ins. Co., supra (jurisdiction upheld on the basis of one business transaction when minimum contacts otherwise found), this contract was made by Hrubetz as seller with Century 21 Shows, Inc. of P. O. Box 5485, North Birmingham, Alabama as purchaser. Although the machine was physically delivered to the purchaser in Wisconsin, nevertheless from the fact that its inherent nature and commercial utility required that it be used by carnival-type operations which attracted members of the public at large, we may infer that the defendant knew, or reasonably should have known, that it would be used as a public attraction in the several states, including Alabama. In theory this case is not unlike Gray v. American Radiator & Standard Sanitary Corp., supra, for here the defendant has sold its product (an "attraction" instead of a safety valve) to another company who integrated that product into a larger product (a carnival or "show" instead of a finished hot water heater) and ultimately sold it to a consumer in another state (a patron of the entertainment provided by the machine instead of a purchaser of the heater). The Duple case is also applicable. Except for the fact that the order here was placed in Oregon, while in Duple it was placed in Hawaii where the accident occurred, the facts are closely aligned. In effect, Century 21 Shows, Inc. took delivery of this machine in Wisconsin and integrated it into its carnival operation which later operated in Alabama. Likewise, Vauxhall Motors took Duple's coach body which was integrated with its coach chassis and shipped it to Hawaii. Under the circumstances created by the parties' business operations, the nature of this equipment, and the business address of Century Shows, Inc., was it not clearly foreseeable as a result of Hrubetz's trade with a company with an Alabama business address that if an injury from a defective machine occurred it would occur in Alabama? The answer must be an affirmative one on the same basis as the affirmative answer in Duple, supra. Indeed, the defendant's knowledge of the purchaser's business address might reasonably have suggested to him that the machine would be used in Alabama. If Hrubetz elected to sell its products in Oregon for ultimate use in another state, such as Alabama, "it is not unjust to hold it answerable there for any damage caused by defects in those products." Gray, supra, 176 N.E.2d at 766. Any hardship in defending the product in Alabama "must be assumed as an attribute of foreign trade." Duple, supra, 417 F.2d at 235. Indeed, from the nature of the purchaser's business operations, Hrubetz could have reasonably foreseen that "The Round Up" would be used in any of the states in the union. Accord, Liberty Mut. Ins. Co. v. American Pecco Corp., 334 F.Supp. 522 (D.C.D.C.1971). Accordingly, "it does not violate due process to require the manufacturer to defend a products liability suit in that state (Alabama) where the accident occurs." Sells, supra, 513 F.2d at 763.
*1026 In addition, Alabama furnishes the more convenient forum. The gist of the plaintiff's complaint is that her minor daughter sustained mortal injuries as a proximate result of either the negligence or wantonness of the defendants in the operation of this attraction by failing to provide adequate safety restraints or guarding devices. Alabama law will govern the substantive questions, cf. Ex parte Central of Georgia Ry. Co., 243 Ala. 508, 10 So.2d 746 (1942). The witnesses to the accident and to the use of the attraction at the time of the accident are likely to be found in Alabama. It would appear, moreover, that any testimony relating to questions of technology or manufacturing design could be as easily produced in Alabama as in Oregon. In contrast, it would appear unfair to require the plaintiff to undertake, with all of its attendant inconveniences and expenses, redress in a distant state far removed from where the accident occurred and was likely investigated.
We hold, therefore, that the trial court erred in granting the motion of the defendant Hrubetz to dismiss the complaint, and we remand the cause to that court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
MADDOX, FAULKNER, ALMON, SHORES and EMBRY, JJ., concur.
TORBERT, C. J., and BLOODWORTH, J., dissent.
BLOODWORTH, Justice (dissenting).
I must respectfully dissent from the holding of the majority decision because I believe it makes Alabama's "long-arm" statute "too long."
I concurred in Chief Justice Torbert's dissent in DeSotacho, Inc. v. Valnit Industries, Inc., 350 So.2d 447 (Ala.1977) because I agreed with him there were not, in my judgment, such "minimal contacts" in that case so as to justify in personam jurisdiction under the "long-arm statute." The majority held otherwise, and, therefore, I cited the DeSotacho v. Valnit case when I authored the opinion for the Court in Semo Aviation, Inc. v. Southeastern Airways Corp., [M.S. May 19, 1978, rehearing overruled July 21, 1978] 360 So.2d 936 (Ala. 1978). Semo, in my judgment, is a much stronger case than DeSotacho. The "minimum contacts" in Semo are as follows: that the planes would be delivered in Alabama; that they would be used to service mail contracts in Alabama; that the agent of defendant came to Alabama to pick up the checks for the planes and to deliver the written invoices and "spec, sheets"; that several phone calls were made by the agent to Alabama during the negotiation of the contract; that a number of calls were made by defendants to an Alabama bank to help the buyer secure financing; that defendant Semo was flying regularly scheduled flights into Alabama pursuant to its mail contract.
The "minimum contacts" present in Semo are a far cry from the "minimum contacts" in this case. Here, the contract was made by the seller-manufacturer who sold its product in Oregon to a customer having a business address in Alabama, the customer accepted delivery in Wisconsin, and the product allegedly caused injury while being operated by the purchaser in Alabama. I believe the majority's application of the "minimum contacts" test in this case (in the words of the Supreme Court in its most recent in personam case in Kulko v. Superior Court of California et al., (1978) 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132) "represents an unwarranted extension of International Shoe and would, if sustained, sanction a result which is neither fair, just, nor reasonable."
TORBERT, C. J., concurs.