406 So.2d 376 (1981)
Dalton BRYANT
v.
CEAT S.p.A.
80-234.
Supreme Court of Alabama.
October 2, 1981.
Rehearing Denied November 6, 1981.
*377 Stephen D. Heninger of Hare, Wynn, Newell & Newton, Birmingham, for appellant.
Juliet G. St. John of St. John & St. John, Cullman, for appellee Ceat S.p.A.
BEATTY, Justice.
Plaintiff, Dalton Bryant, appeals from the order of the Circuit Court for Morgan County which granted the motion of defendant, Ceat S.p.A., an Italian corporation, for summary judgment on grounds that the contracts of the corporation with this state are insufficient to support in personam jurisdiction[1] under our long-arm statute, Rule 4.2, ARCP. We reverse and remand.
On July 12, 1976, Ralph Speegle took his truck to plaintiff Bryant's welding shop to have it repaired. While Bryant was evaluating the repairs needed, he laid a clipboard on the tire. The tire exploded, severely injuring Bryant. The evidence indicates that the tire was recapped at least twice before the explosion. Bryant filed suit seeking damages against Speegle and numerous parties, including Ceat S.p.A. (Ceat), the Italian manufacturer of the tire.
The only issue on this appeal is whether in personam jurisdiction over Ceat may be asserted consistently with the Due Process Clause of the Fourteenth Amendment. Alabama's long-arm statute is codified in Alabama Rule of Civil Procedure 4.2. That statute for substituted service has been found to extend to the permissible limits of due process. Sells v. International Harvester Co., Inc., 513 F.2d 762 (5th Cir. 1975); Semo Aviation, Inc. v. Southeastern Airways Corp., Ala., 360 So.2d 936 (1978).
The Supreme Court of the United States recently reaffirmed the principle that a forum state may exercise in personam jurisdiction over a nonresident defendant so long as there are such minimum contacts that the suit does not offend "traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Whether sufficient contacts exist so that the maintenance of a suit in Alabama does not offend reasonableness and fair play is to be determined on a case by case basis. Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). The facts of the present case support our finding that Ceat's contacts are sufficient to subject it to in personam jurisdiction in Alabama.
Although Ceat has no offices, employees or property in the United States, its wholly owned subsidiary, Ceat Representative Office, Inc. (Ceat Representative) has offices in New York and Ohio. The four employees of Ceat Representative solicit sales to wholesalers in the United States of tires manufactured under Ceat's own brand *378 name. The tires are sent directly from Italy to the wholesalers.
Three corporations in the United States have private brand contracts with Ceat. One is located in Massachusetts, one in New York, and the other in California. These corporations deal directly with representatives of Ceat in Italy, not with Ceat Representative.
In 1974 Ceat, pursuant to its contract with the Massachusetts corporation, Duddy's, Inc., manufactured the tire in question along with others of the same type. The brand name of the tire is "Tyrino," indicating the tire was produced exclusively for sale by Duddy's, Inc. The shipment records for that specific type tire to Duddy's in 1974 show that 1,224 tires were destined for distribution by Duddy's to thirteen different locations in nine different states. Although Ceat denies any knowledge of the subsequent movement of those tires, John H. Porosky, a vice president of Ceat Representative, testified that he knew Duddy's was a nationwide concern with tire sales of twenty million dollars per year. In 1973, Ceat sold over 5,000 "Tyrino" tires to Duddy's for distribution in the United States, and in 1974 over 2,000.
The most important fact in this case and the one which clearly establishes Ceat's contacts with this state is that Ceat's sales records show that in 1972 invoices for 4,300 tires were sent to David Tire Company in Birmingham, Alabama, presumably on order from Duddy's. In 1973, an additional 9,284 tires were invoiced to David Tire Company. Ralph Speegle, in 1974, purchased the tire in question in Priceville, Alabama.
Despite facts indicating to the contrary, Ceat claims that it was not "foreseeable" that it would be subject to suit in Alabama. Ceat relies upon the recent clarification by the Supreme Court of the United States on the degree of foreseeability necessary to determine whether the exercise of in personam jurisdiction by a state is permissible. In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court stated that in order to find the foreseeability element of due process the defendant's conduct within the state must be such that he "reasonably anticipates being haled into court there."Id. at 297, 100 S.Ct. at 566. A comparison of the facts in World-Wide Volkswagen with those in the instant case will illustrate that Ceat's conduct met the foreseeability criterion of due process.
In World-Wide Volkswagen, New York residents who had purchased an automobile from a New York retailer were injured in Oklahoma while driving to a new home. The Court held that due process would not permit Oklahoma to assert jurisdiction over the New York retailer of the automobile or New York wholesaler who sold to retailers in New York, Connecticut and New Jersey. The Court pointed out that the "foreseeability" element of due process was lacking. There was no evidence of record that any automobile distributed by World-Wide was sold to retail customers outside the tri-state area. In other words, there was no evidence of a sale to a retailer in Oklahoma, the state where the injury occurred.
The facts in the instant case differ materially from those in World-Wide Volkswagen. Besides the injury which occurred in Alabama to an Alabama resident, this case has sales of Ceat's tires made by a wholesaler to an Alabama retailer. An Alabama consumer purchased the tire in question in Alabama. Thus, Ceat established "contacts" with this state and should have been able to reasonably anticipate being haled into court here.
The plaintiffs in World-Wide Volkswagen had also sued the German manufacturer of the automobile, Audi, which never contested jurisdiction. Nonetheless, through dictum, the Court imposed jurisdiction upon the German manufacturer when it stated:
Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other states, it is not unreasonable to subject it to suit in one of those *379 states if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum state does not exceed its powers under the due process clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. [Emphasis added.] [444 U.S. at 297-298, 100 S.Ct. at 567.]
The facts of the present case fall within the above dictum which clearly recognizes that jurisdiction over a foreign corporation such as Ceat, an Italian manufacturer, is constitutional. The record shows that Ceat, in addition to the private brand contracts with wholesalers in Massachusetts, New York and California, maintains sales of its tires in numerous other states. In any event Ceat, by selling its tires to wholesalers without restrictions, must have been aware that further distribution to retailers would take place. Thus, as described in World-Wide Volkswagen, Ceat "deliver[ed] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." Through the wholesaler of its tires, Ceat, at least indirectly, served the market for its product in Alabama and "it is not unreasonable to subject it to suit" in this state.
The Fifth Circuit, in Oswalt v. Scripto, Inc., 616 F.2d 191 (5th Cir. 1980), relied upon the World-Wide Volkswagen holding and dictum when it upheld jurisdiction under the Texas long-arm statute over a Japanese manufacturer which sold lighters to a United States distributor, Scripto, Inc., with knowledge that Scripto sold the lighters to a nationwide market. Ceat claims that the case at bar is distinguishable from Oswalt because Ceat lacked knowledge that Duddy's is a nationwide concern. Ceat was aware, however, that Duddy's did "serve the market for its product in other states." Thus, according to the World-Wide Volkswagen dictum, a finding of service by Duddy's to a nationwide market is not essential for the imposition of jurisdiction over Ceat.
This Court has sustained jurisdiction over foreign manufacturers in other products liability cases. In Mann v. Frank Hrubetz & Co., Inc., Ala., 361 So.2d 1021 (1978), we held that it does not violate due process to require the manufacturer to defend a products liability suit in that state (Alabama) where the accident occurs. Any hardship in defending the product in Alabama is an attribute of foreign trade. The facts of Mann and the cases discussed in that opinion, particularly Sells v. International Harvester Co., 513 F.2d 762 (5th Cir. 1975); Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969); and Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), support the long-standing proposition that it is not "offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels for trade." Mann, 361 So.2d at 1024. See also Schoel v. Sikes Corp., 533 F.2d 930 (5th Cir. 1976).
We hold, therefore, that the trial court erred in granting the motion of the defendant Ceat for summary judgment based upon lack of jurisdiction over the person, and we remand the cause to that court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
MADDOX, JONES, ALMON, SHORES and ADAMS, JJ., concur.
FAULKNER, J., with whom TORBERT, C. J., and EMBRY, J., concur, dissents.
FAULKNER, Justice (dissenting).
I dissent. The majority's opinion that Ceat is subject to in personam jurisdiction is incorrect for two reasons. First, the record contains no evidence whatsoever of Ceat's present contacts with the United States, this region, or this state. Second, the contacts of Ceat with this state via an independent contractor, Duddy's, over eight years ago are insufficient to justify exercising jurisdiction over Ceat.
*380 A plaintiff's allegation of jurisdiction is generally sufficient to sustain the forum's power over a defendant. Nevertheless, once jurisdiction is challenged, the plaintiff bears the burden of establishing a nonresident defendant's contact with the state. Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co., 469 F.2d 416 (5th Cir. 1972). Discovery techniques are available to explore the extent of a defendant's contacts with the forum state. See Budde v. Ling-Temco-Vought, Inc., 511 F.2d 1033 (10th Cir. 1975); H. L. Moore Drug Exchange Inc. v. Kline & French Laboratory, 384 F.2d 97 (2nd Cir. 1967); Associated Metals & Minerals Corp. v. S. S. Geert Howaldt, 348 F.2d 457 (5th Cir. 1965). Plaintiff simply did not sufficiently explore Ceat's contacts with the forum. The only evidence cited by the majority of Ceat's present contacts is the testimony of John H. Porosky that he "believed" Duddy's to be a nationwide concern. Porosky is an employee of a subsidiary of Ceat and is not responsible for private brand contracts of Ceat. Porosky is not privy to the business records of Duddy's nor did he attempt to introduce any business records into evidence. There is no evidence of where tires are distributed in the United States, where retailers of Ceat tires are located, or whether any Ceat tires have been sold in Alabama in the past eight years. Ceat and Duddy's may be nationwide concerns, but this Court can only rely on the evidence presented in the record. We may not properly assume that a defendant has contacts with the state.
The Due Process Clause serves the primary function of protecting a defendant against the burden of litigating in an inconvenient forum. Although the permissible limits of due process have expanded in recent years, "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 858 (1958). The Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
The majority fails to address the question of when jurisdictional contacts are measured. I believe the Due Process Clause of the Constitution is offended by holding that a defendant is subject to jurisdiction on the basis of its contacts eight years prior to institution of a suit against it. The principal contacts relied on by the majority to justify the assertion of jurisdiction over Ceat are contacts occurring eight years ago. The majority notes that Ceat sold tires to Duddy's in 1974, who distributed to retailers in nine states. The only tires sold in Alabama by Duddy's were sold in 1972 and 1973. Clearly, Ceat could not foresee being liable to suit in Alabama eight years later, a period beyond the normal life of a tire. By foregoing the privilege of conducting activity in Alabama for eight years, Ceat should gain assurance that it would not be liable to suit in Alabama.
Ceat has no offices, employees or property in the United States. Plaintiff failed to prove that Ceat has any contacts with the forum. Due process requires that Ceat be protected from the burden of litigating in Alabama, a state which has no constitutionally cognizable contacts with Ceat.
I would therefore affirm the trial court's dismissal of the action against Ceat on the basis of a lack of in personam jurisdiction.
TORBERT, C. J., and EMBRY, J., concur.
NOTES
[1] We do not address the propriety of granting a motion for summary judgment, Rule 56, ARCP, as compared to a Rule 12(b)(2), ARCP, motion to dismiss for lack of jurisdiction over the person.