JOHNSTONE, Justice.
The defendant Alloy Wheels International, Ltd., a foreign corporation engaged in manufacturing aluminum alloy wheels, petitions this Court for a writ of mandamus directing the trial judge to vacate his order denying the motion of Alloy Wheels for a summary judgment grounded on lack of personal jurisdiction. Alloy Wheels asks this Court to issue a writ of mandamus directing the trial judge to issue an order granting a summary judgment in favor of Alloy Wheels. Because the materials before us establish that the trial court lacked personal jurisdiction over Alloy Wheels, we grant the petition and issue the writ.
On September 26,1999, Katherine Victoria Vance was killed in the rollover wreck of her 1998 Land Rover Discovery sport-utility vehicle. On September 10, 2001, Katherine’s mother, Sue Vance, as the personal representative of Katherine’s estate, sued a number of defendants, and eventually added Alloy Wheels as a defendant, for Katherine’s wrongful death. The plaintiff alleged product liability claims and Alabama Extended Manufacturer’s Liability Doctrine claims against the defendants. The plaintiff specifically alleged that Alloy Wheels had defectively designed and manufactured the aluminum alloy wheels on Katherine’s Land Rover and that a crack in at least one of the wheels caused the fatal wreck. Answering the amended complaint, Alloy Wheels asserted, among other defenses, the lack of personal jurisdiction.
Thereafter, Alloy Wheels moved for a summary judgment on the ground that the trial court lacked personal jurisdiction over Alloy Wheels. Alloy Wheels relied on the allegations of the complaint and on two affidavits of Paul Merritt, the operations director of Alloy Wheels in the United Kingdom. Alloy Wheels argued that it did not have sufficient minimum contacts with the State of Alabama for the trial court to exercise personal jurisdiction over Alloy Wheels.
The plaintiff submitted a brief and evi-dentiary materials in opposition to the motion for summary judgment. The brief submitted by the plaintiff is not among the materials before us, but the evidentiary submissions are.
“[MJandamus is a drastic and extraordinary writ that will be issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an im *822 perative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Horton, 711 So.2d 979, 983 (Ala.1998). “Subject to certain narrow exceptions ..., the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for writ of mandamus.” Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758, 761 (Ala.2002) (citing Ex parte Jackson, 780 So.2d 681, 684 (Ala.2000)). One of the exceptions is the denial of a motion grounded on a claim of lack of personal jurisdiction, Ex parte Sekeres, 646 So.2d 640 (Ala.1994), Ex parte Paul Maclean Land Servs., 613 So.2d 1284 (Ala.1993), and Ex parte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880 (Ala.1983).
“The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmov-ant and resolve all reasonable doubts against the movant.”
Brewer v. Woodall, 608 So.2d 370, 372 (Ala.1992).
“A summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The party moving for the summary judgment, here [Alloy Wheels], has the burden of establishing a prima facie showing that there is no genuine issue of material fact. Berner v. Caldwell, 543 So.2d 686 (Ala.1989). If the moving party makes such a showing, then the burden shifts to the nonmoving party to rebut that-showing by presenting substantial evidence creating a genuine issue of material fact. Substantial evidence is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Young v. La Quinta Inns, Inc., 682 So.2d 402, 403 (Ala.1996).
“Rule 4.2, Ala. R. Civ. P., [Alabama’s long-arm statute] extends the personal jurisdiction of Alabama courts to the limit of due process under the federal and state constitutions. Sieber [v. Campbell, 810 So.2d 641 (Ala.2001)]. See also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Duke [v. Young, 496 So.2d 37 (Ala.1986)]; Brooks v. Inlow, 453 So.2d 349 (Ala.1984); and Alabama Waterproofing Co. v. Hanby, 431 So.2d 141, 144-146 (Ala.1983). ‘A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.’ Sieber, 810 So.2d at 644. See also Sudduth [v. Howard], 646 So.2d [664] at 667 [ (Ala.1994) ].
“ ‘ “ ‘What is required is that the out-of-state resident have “some minimum contacts with this state [so that], under the circumstances, it is fair and reasonable to require the person to come to this state to defend an. action.” Rule 4.2(a)(2)(I), Ala. R. Civ. P. [ (Emphasis added.) ]
“ ‘ “ ‘ “ ‘[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend “traditional notions of fair play *823 and substantial justice.” ’ ” ’ McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)....
[[Image here]]
“ ‘ “A relevant factor in a due process analysis is whether the defendant should have reasonably anticipated that he would be sued in the forum state. [(Emphasis added.)] In Dillon Equities [v. Palmer & Cay, Inc., 501 So.2d 459, 462 (Ala.1986)], this Court, quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), noted:
“ ‘ “ ‘ “The foreseeability that is critical to due process analysis ... is that the defendant’s conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.” (Citations omitted.) [ (Emphasis added.) ]’ ” ’
“Sudduth, 646 So.2d at 667 (quoting Knowles v. Modglin, 553 So.2d 563, 565-66 (Ala.1989)).”
Ex parte McInnis, 820 So.2d 795, 802-03 (Ala.2001) (quoting Sudduth v. Howard, 646 So.2d 664, 667 (Ala.1994)). Rule 4.2(a) provides, in pertinent part:
“(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person’s
[[Image here]]
“(D) causing tortious injury or damage in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenues from goods used or consumed or services rendered in this state;
[[Image here]]
“(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirements of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States.”
In Ex parte McInnis, this Court explained the application of the stream of commerce doctrine to a products liability case:
“In World-Wide Volkswagen Corp. [v. Woodson], 444 U.S. [286] at 297-98, 100 S.Ct. 559 [ (1980) ], the Supreme Court stated that ‘[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.’ In Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Supreme Court clarified the ‘stream of commerce’ doctrine of personal jurisdiction:
“ ‘Since World-Wide Volkswagen, lower courts have been confronted with cases in which the defendant acted by placing a product in the stream of commerce, and the stream of commerce eventually swept defendant’s product into the forum State, but the *824 defendant did nothing else to purposefully avail itself of the market in the forum State. Some Courts have understood the Due Process Clause, as interpreted in World Wide Volkswagen, to allow an exercise of personal jurisdiction to be based on no more than the defendant’s act of placing the product in the stream of commerce. Other courts have understood the Due Process Clause and the above-quoted language in World-Wide Volkswagen to require the action of the defendant to be more purposefully directed at the forum State than the mere act of placing a product in the stream of commerce.
[[Image here]]
“ ‘We now find this latter position to be consonant with the requirements of due process. The “substantial connection,” [Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)], between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. Burger King, supra, 471 U.S., at 476, 105 S.Ct. 2174.... The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant’s awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.’
“480 U.S. at 110-12, 107 S.Ct. 1026.”
Ex parte McInnis, 820 So.2d at 803-04 (most original emphasis omitted; new emphasis added).
The affidavit dated July 31, 2002, sworn by Merritt, and submitted by Alloy Wheels states, in pertinent part:
“2. The Federal Motor Vehicle Safety Standards of the United States of America require the manufacturer of rims distributed in the United States to include a rim marking which includes a designation identifying the manufacturer of the rim by name, trademark, or symbol, a designation that includes the source of the rim’s published nominal dimensions identified by ‘T’ for The Tire and Rim Association or ‘E’ for The European Tire and Rim Technical Organization; the symbol ‘DOT’ as a certification that the rim complies with all applicable Motor Vehicle Safety Standards; and the size of the wheel.
“3. When Alloy Wheels International, Ltd. (UK) supplies wheels to Land Rover for use on vehicles to be exported to the United States of America, Alloy Wheels International includes the markings required by the Federal Motor Vehicle Safety Standards.
“4. I have examined photographs of the wheels identified as the wheels mounted on the vehicle which the decedent Katherine Victoria Vance was driving at the time of her death. Those wheels include the markings ‘AWI/K.’ This is the identifier of Alloy Wheels *825 International, Ltd. This identifier was placed on the wheel in accordance with the Federal Motor Vehicle Safety Standards .... ”
The affidavit dated on August 2, 2002, sworn to by Merritt and submitted by Alloy Wheels, states, in pertinent part:
“2. Alloy Wheels International, Ltd. is in the business of manufacturing aluminum alloy wheels for motor vehicles. All of the wheels currently manufactured by Alloy Wheels International, Ltd. are manufactured at the plant in Kent, England. AWI had another plant in Cardiff, Wales until July 2000 when it closed.
“3. One of AWI’s customers is Land Rover Group, which manufactured the Land Rover Discovery driven by Ms. Vance. All wheels sold to Land Rover are either sent to Land Rover’s aftermarket distribution center in Birmingham, England or to a designated tire and wheel assembly point in the U.K. None of the wheels manufactured by AWI for Land Rover are shipped by AWI to the State of Alabama or even the United States for that matter.
“4. AWI has in the past sold wheels to General Motors Corporation, N.A. and Ford Motor Company, U.S. Those wheels were also manufactured at one of the plants in the U.K. and shipped directly to GM and Ford in the U.S. The last shipment to General Motors Corporation, N.A. was October 2, 2000 to its Oshawa, Ontario, Canada assembly plant. The last shipment to Ford Motor Company, U.S. was June 15, 1998 to its Livonia, Michigan facility.
“5. All of AWI’s sales are to original equipment manufacturers such as Land Rover. AWI has no private brand contracts with any U.S. entities.
“6. Since August 4, 1999, AWI has had a wholly owned subsidiary, Alloy Wheels International, Inc., in Bingham Farms, Michigan, which provides customer relationship and marketing services of AWI’s wheels to U.S. auto manufacturers. That subsidiary does not send, regularly or otherwise, its employees, representatives, officers, or agents to Alabama to sell, repair, demonstrate, or maintain aluminum alloy wheels. Nor do said individuals solicit sales orders for said wheels in the State of Alabama by any means.
“7. AWI does not regularly or otherwise send its employees, representatives, officers or agents to the State of Alabama to sell, repair, demonstrate, or maintain aluminum alloy wheels. Nor do said individuals solicit sales orders for said wheels in the State of Alabama by any means.
“8. The aluminum alloy wheels which were on Katherine Vance’s Land Rover Discovery at the time of her motor vehicle accident on September 26, 1999 were manufactured specifically for Land Rover by AWI at its facility in Kent, England. After manufacture, the wheels were sent to Land Rover via one of its tire assembly points in the U.K. This was done pursuant to a contract between AWI and Land Rover which was entered in the U.K.
“9. Never before this litigation did AWI have any contact with the State of Alabama. Any contact with the State of Alabama has arisen solely as a consequence of this litigation and subsequent to January 1, 2002 and is accordingly outside the scope of this affidavit.
“10. AWI is not qualified to do business in the State of Alabama, and AWI does not do business in the State of Alabama in any form or fashion. AWI does not have a registered agent for service of process in the State of Alabama. AWI does not transact any busi *826 ness in the State of Alabama nor does it enter into contracts in the State of Alabama. AWI does not contract to supply goods or services in the State of Alabama. AWI performs no services in the State of Alabama and makes no payments within the State of Alabama. AWI conducts no manufacturing in the State of Alabama, nor does AWI ship products to the State of Alabama either directly for itself or at the request of a customer.
“11. AWI has no employees, representatives, officers or agents in the State of Alabama and none of its officers, agents, employees or representatives come to- Alabama to solicit sales of its wheels, or to market, repair, demonstrate or maintain its wheels on any basis, regular or otherwise.
“12. AWI has no interest in, does not use, possess or own any real property, warehouse, plant or place of business in the State of Alabama.
“13. AWI has no bank accounts in the State of Alabama.
“14. AWI has not contracted to insure any person, property, or risk located within the State of Alabama at any time.
“15. AWI does not conduct any telephone calls to the State of Alabama, . does not mail printed or written materials to individuals or entities within the State of Alabama, and AWI does not advertise or solicit business in Alabama. AWI does not direct any advertising at persons or entities within the-State of Alabama.
“16. AWI has made no direct sales, closed no sales, or otherwise • conducted ■ no business in the State of Alabama.
“17. AWI does not market its wheels through a distributor who has agreed to act as a sales agent in the State of ■ Alabama. AWI does not sell wheels at wholesale or retail in the State of Alabama. ■
“18. AWI did not design or control the system of distribution which carried any of its wheels, whether the subject wheels or otherwise, into the State of Alabama.
“19. AWI does not extend written warranties on its wheels to residents of the State of Alabama. Any warranty on its wheels is extended directly to the original equipment manufacturer to which AWI sold the wheels.
“20. AWI has no channel for providing regular advice to individuals residing in the State of Alabama.
“21. AWI did not have nor did it initiate any contact with Katherine Vance. AWI did not know Katherine Vance would use the wheels in Alabama. AWI did not know Katherine Vance was a resident of the State of Alabama.
“22. AWI did not manufacture its wheels in anticipation of sale in the State of Alabama. AWI did not contemplate that its wheels would end up in the State of Alabama. AWI never contemplated that its sales of wheels to Land Rover in the United Kingdom was subjected to lawsuits in the State of Alabama.”
Because Alloy Wheels submitted sufficient evidence to establish a prima facie case of lack of personal jurisdiction, the burden shifted’ to the plaintiff to present evidence to establish minimum contacts by Alloy Wheels with Alabama sufficient for the trial court to exercise personal jurisdiction. While the plaintiff submitted some evidentiary materials in opposition to the motion for summary judgment filed by Alloy Wheels, none of the plaintiffs materials refutes the statements of fact sworn by Merritt in the affidavits submitted by Alloy Wheels.
*827 The plaintiff relies on Smith v. Yanmar Diesel Engine Co., 855 So.2d 1039 (Ala.2003), Bryant v. Ceat, 406 So.2d 376 (Ala.1981), and Mann v. Hrubetz, 361 So.2d 1021 (Ala.1978), to support her claim of sufficient contacts between Alloy Wheels and the State of Alabama. These cases are materially distinguishable from the case now before us in that, in each of the former, the defendant-foreign-manufacturer “purposefully directed” its actions toward Alabama and thus met the test that “the defendant should have reasonably anticipated that [it] would be sued in” Alabama, McInnis, supra, at 803.
In Smith, the defendant-foreign-manufacturer of tractors, Yanmar, stipulated that it “ ‘sold and continues to sell genuine Yanmar parts in Alabama through authorized Yanmar dealers in Alabama.’ ” Smith, 855 So.2d at 1041. In Bryant, the sales records of the defendant-foreign-manufacturer of tires, Ceat, showed that Ceat had sent, through its distributer Duddy’s Inc., over 13,000 tires to David Tire Company in Birmingham, Alabama. Bryant, 406 So.2d at 378. In Mann, the defendant-foreign-manufacturer of carnival rides sold a carnival ride to an Alabama carnival business, Century 21 Shows, Inc., located in North Birmingham, Alabama. The Mann Court held that, although the sale itself did not occur in Alabama, the defendant had sufficient minimum contacts with Alabama for the trial court to exercise personal jurisdiction over the defendant because the defendant could reasonably have anticipated that injuries would result from the operation of the ride in Alabama.
The plaintiff now before us argues that the evidence establishes an intent or purpose in Alloy Wheels to serve, in the words of its brief, “the American market.” Evidence of an intent or purpose to serve “the American market,” however, absent evidence of “an intent or purpose to serve the market in the forum State,” does not establish the “action of the defendant purposefully directed toward the forum State” that would constitute contact sufficient to warrant the exercise of personal jurisdiction over the defendant by the forum state. McInnis, supra, at 804 (quoting Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). On the contrary, the plaintiff now before us has not submitted substantial evidence that Alloy Wheels “purposefully directed” any action “at the forum State [other] than the mere act of placing a product in the stream of commerce.” World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), Asahi, and McInnis, supra. No evidence establishes sufficient minimum contacts between Alloy Wheels and the State of Alabama.
Therefore, Alloy Wheels has shown a clear legal right to mandamus relief. We grant the petition of Alloy Wheels and issue a writ of mandamus directing the trial court to vacate its order denying the motion of Alloy Wheels for summary judgment and to enter an order granting the motion on the ground of lack of personal jurisdiction.
PETITION GRANTED; WRIT ISSUED.
HOUSTON, SEE, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs specially.